## Hall v. Hall et al.

Jan. 22, 1943.

774

Stratton & Stephenson for appellant.

W. Claude Caudill for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

John M. Hall died intestate, a citizen of Floyd County on February 7, 1937. He and appellant, plaintiff below, Sarah Damron Hall, were married on March 8, 1931, and at the death of John M. Hall he left surviving him his widow and children by his first marriage, and some grandchildren, the issue of other children whose death occurred before that of decedent. After the death of John M. Hall a son-in-law, whose wife was dead leaving children, qualified as administrator of decedent's estate and he was also appointed and qualified as guardian for his children. Decedent at the time of his death was the owner in fee of about 1,000 acres of mountain coal land in separate tracts and he left quite an amount of personal property. While living he kept his private papers deposited in a trunk. He gave the custody of the key to appellant from whom he obtained it whensoever he desired. Shortly after the burial of decedent his administrator, Joe Alley, obtained the key and the trunk which he took to his home nearby and unlocked it. He found therein some deeds from the decedent to his children bearing date September 8, 1930, by which he conveyed to his children, issue of his first marriage, all of his then owned real estate which deeds the administrator immediately procured to be recorded in the county court clerk's office.

Plaintiff as decedent's surviving widow (she having no children) filed this action in the Floyd circuit court against her husband's administrator, and his heirs, issue by his first marriage, seeking allotment to her for her distributive share in her husband's property owned by him at the time of his death. The answer thereto presented an issue as to the amount of decedent's personal property, and denied some other allegations of the petition. It then interposed two affirmative defenses: (1) that

the plaintiff had signed a written release of all of her interests in her husband's estate for the consideration of $1,750, and (2) that decedent did not own the real estate conveyed by the deeds referred to at the time of his death, and therefore, plaintiff was not entitled to dower in the land so conveyed. Plaintiff replied thereto, alleging, (a) that she was fraudulently induced to execute the relied on release, and (b) that it was without consideration. Plaintiff also affirmatively alleged that the deeds were never delivered. There were other issues made by the pleadings relating to plaintiff's rights to royalties flowing from some mineral leases that her deceased husband had executed during his lifetime—developments having been made on some of them—which claimed rights defendants contested. After the issues were made a vigorous battle enraged until the submission of the cause, when the court adjudged that the relied on release was ineffective for the reasons stated in the plaintiff's reply and cancelled it. In disposing of the issue as to the delivery of the deeds relied on by defendants the court said this in its judgment: "The Court further finds and adjudges that the plaintiff knew of the execution of said deeds and saw them before she was married to the decedent and it is claimed by her, and *adjudged by the Court*, that the deeds were not delivered by John M. Hall in his lifetime but were placed in a trunk and the key thereto was delivered to her by the said John M. Hall, that said deeds remained in the trunk until after said Hall died, at which time the said trunk with the deeds in it and key to the trunk were delivered to the defendant, Joe Alley, by the said Sarah Damron Hall, and that he had the same put to record." (Our emphasis.)

It will thus be seen that the court adjudged that the deeds relied on by defendants and appellee "were not delivered by J. M. Hall in his lifetime," and that he kept them in his trunk where they were at the time of his death, and that plaintiff was made the custodian of the key to the trunk. From that finding (and which is all there is contained in the judgment with reference to that issue) the court adjudged, for some reason not disclosed by the judgment, that the deeds, nevertheless, became effective to pass the title to the lands conveyed, subject to a life interest in the vendor as retained in them. As a consequence the court denied plaintiff's claim to a dower interest in any of the land embraced in them. Both sides objected and excepted to the judgment insofar as it was

adverse to them, but only plaintiff prosecuted this appeal from the only issue decided against her, which was that the deeds passed her husband's title to the conveyed land, notwithstanding the court found and adjudged that they were never delivered.

Defendants although they prayed and were granted an appeal in the judgment to this court from the court's disposition of the issues of the validity of the release, and that the conveyances were not delivered, have not appealed therefrom; nor have they obtained a cross-appeal in this court. They did, however, move in this court to strike portions of the record which was passed to a determination of the appeal on its merits and which is the first question for consideration.

The pleadings made a number of issues, other than those we have stated, and by far the greater portion of testimony was taken on such issues. Since, therefore, appellant complained only of the sole one adjudged against her, counsel for her filed with the clerk of the court a schedule directing that officer to copy as a part of the record only the testimony heard upon the issue as to the *delivery* of the deeds—specifying it—and notice of its filing was indorsed thereon by defendants' counsel, but no counter schedule was filed. The motion to strike asked that the entire record filed in this court, as directed by the limited schedule, be stricken and in support of that motion we are cited to the case of Dockins v. Dukes, 151 Ky. 276, 151 S. W. 679. That case appears to have involved only one issue which was adjudged against appellant, and was *not* one containing more than one issue, all of which were determined for appellant and against appellee, except one, which was determined in favor of appellee, and from which sole issue appellant appealed, but appellee failed to appeal from the judgment or determinations of the court rendered against him. Therefore, the rule that a judgment will be affirmed, though based on an incorrect premise if there are others in the record that would sustain the judgment, has no application to the instant case, but which was applicable in the Dockins case.

Subdivision (a) of subsection 1 of section 737 of our Civil Code of Practice prescribes that the clerk of the trial court "shall copy the entire record, or parts thereof, according to the directions of the judge of the court, or of the parties to the appeal; and the filing of a sched-

ule, as hereinafter authorized, shall be deemed a direction to copy the parts of the record therein mentioned." Our present rule relating to the question under consideration is subsection 14 of rule III, relating to records, and it prescribes that this court will conclusively presume that a record brought here pursuant to a schedule of which notice was given to the opposite side and made and filed pursuant to the section of the Code referred to "is the complete record, and that all parties interested can try the appeal on such record." Our opinions are almost countless wherein we sustained the practice outlined in the Code section, and in our promulgated rule. The latest case in which it was done being Smith v. First National Bank of Williamson, 287 Ky. 609, 154 S. W. (2d) 705. In that case a schedule was filed in which appellant directed the court to copy only certain parts of the record and of which filing notice was given to appellees. They filed no additional schedule (and which appellees failed to do in this case), and we held that: "Where that is the case and there is no further direction by the appellees to prepare additional parts of the record, it is deemed the parties have consented to the appeal being tried upon the record as thus prepared. It is different when the record purports to be complete, for then it is conclusively presumed that the missing portions support the judgment. Rule III, Par. 14; Clevinger v. Nunnery, 140 Ky. 592, 131 S. W. 519; White's Adm'x v. White, 148 Ky. 492, 146 S. W. 1101; Ward v. Vanhoose, 222 Ky. 135, 300 S. W. 337."

Neither the Code section referred to, nor our promulgated rule requires a schedule to be filed by the appellant when it appears that the entire record is brought to this court, and it is the duty of the Clerk of the trial court to copy the entire record unless directed otherwise by a schedule filed by the defeated litigant. Therefore, it is only when an appeal is taken on a partial record that a schedule is absolutely necessary. Our conclusion, therefore, is that the ruling in the Dockins case supra, unless sustainable for the reasons hereinbefore stated, misinterprets the practice, and that the holding in the late Smith case referred to, with the long list of others preceding it, should be followed, for which reason the motion to strike is overruled, and which brings us to a determination of the appeal on its merits.

We have already said that no appeal has been prose-

cuted by appellees from any ruling of the court against them, nor have they asked for or obtained a cross appeal on the record filed by appellant. They, therefore, appear in this court as consenting to all of the adjudged issues against them. Such adjudged issues, of course, were in favor of appellant, and by her appeal she complains only of the judgment of the court giving effect to the challenged deeds, notwithstanding it was adjudged that they were never delivered. In the circumstances appellees may not on this appeal question, as we have seen, any of the issues decided against them, but may only defend the single issue complained of by appellant relating to the effectiveness of the deeds that she attacks, and that is so, notwithstanding we have many times held that if a judgment is correct, but bottomed on the wrong reason, it will nevertheless be affirmed if there exists other supporting reasons, which the court found to be true, or which the record disclosed were true. But when such unapplied reason was determined against appellee and he did not perfect an appeal therefrom by either direct or cross appeal, no such unrelied on reason can be invoked by him on appeal by his adversary to sustain the judgment in his favor, and which is supported by the text in 5 C. J. S., Appeal and Error, p. 161, section 1498, saying: ''By the great weight of authority an appellee or defendant in error is not entitled, in the absence of a statute authorizing cross assignments of error, to present for review exceptions taken by him to rulings, orders, instructions, decisions, or findings of the trial court unless he has taken or sued out a separate, or cross, appeal, petition in error, or writ of error.''

To that excerpt there are cited cases from practically every state in the Union, as well as the United States Supreme Court in the case of Bothwell v. United States, 254 U. S. 231, 41 S. Ct. 74, 64 L. Ed. 238, in support thereof, including fifteen opinions of this court. It is, therefore, clear that appellees are in no condition to complain of the ruling of the trial court that the deeds relied on by them *were not* delivered by decedent during his lifetime, and the only point that they may insist was correctly determined by the trial court is the one that plaintiff in some manner had waived or was estopped to rely on their non-delivery. We have searched the record in vain to find any support for that holding, and it will be observ-

ed from the excerpt supra from the court's judgment that it assigned no reason therefor.

It is true that cases are cited by appellees to the effect that a deed may be delivered by the grantor to a stranger with the understanding and agreement that he shall thereafter deliver the deed to the vendee for and on behalf of the vendor, under which arrangements the custodian of the deed to whom it was delivered becomes the agent of the grantee and such delivery is sufficient to pass title. Many cases determined by this court approve that rule and it is a thoroughly established one in the law. But in this case the plaintiff was merely the custodian of the key to the trunk of the deceased, in which he deposited the deeds and kept them there until his death. He, therefore, was the real custodian of his own conveyances and nothing that appellant did, even remotely approached either a waiver or estoppel against her asserting any of her rights to the property attempted to be conveyed by the attacked deeds.

The only argument in the brief for appellee in support of the court's holding is contained in paragraph IV saying: "If the appellant, by keeping these keys, prevented the delivery of the deeds, she certainly cannot be allowed to take advantage of her own wrong doing and now be given a dower interest in the lands covered by these deeds. If, on the other hand, the Court takes the position that she did not prevent the delivery of the deeds by keeping the deeds locked in the trunk and retaining possession of the only key to the trunk, then the appellees contend that the delivery of the keys to appellant, a third person, was in itself a sufficient delivery to pass title to the grantees." In support of that contention the case of Huff v. Begley, 233 Ky. 181, 25 S. W. (2d) 75, is relied on, but in that case the opinion said: "It was agreed that appellant should execute a deed to his land and place it with Boyd Campbell, and that Campbell should hold that deed until appellee executed a deed, and he was to likewise send it to Campbell, and, when Campbell had received both of the deeds, he was to deliver them to the respective parties."

The transaction there was for an exchange of title in real estate, and the specified arrangement for the deed in question to be delivered to Campbell, a stranger thereto, was conditioned upon the other party to the transaction executing and delivering his deed. Campbell, there-

fore, was the agent of the vendor to deliver the deed upon performance of the conditions imposed. No delivery or authority to deliver the deeds by plaintiff in the instant case appears in the record. At most she was the mere custodian of the *key* to the trunk in which her deceased husband deposited and kept the deeds, and the doctrine of the Huff case relied on by appellees has no application whatever to the facts of this one. See, also, the case of Suter v. Suter, 278 Ky. 403, 128 S. W. 704, wherein the question of requisite delivery of a deed to become effectual is discussed and determined.

However, we have read the testimony contained in the record (which, according to the schedule and certificate of the clerk, is all that was introduced on the issue of delivery), and we are convinced that the court correctly held that the release given by the plaintiff was ineffective, and also correctly held that the deeds were never delivered. Therefore, if both of those issues were properly before us we would be compelled to approve the judgment disposing of them.

Wherefore, for the reasons stated, the judgment is reversed insofar as it held the challenged deeds to be effective, but it is undisturbed in all other respects, with directions to set it aside and to allow the widow, in addition to the allowances made to her therein, the right of dower in and to the real estate covered by the ineffective deeds.