MELVIN PINE & Co., INC., Respondent, *v.* GEORGE McCONNELL et al., Copartners Doing Business under the Name of DESMOND-STEPHAN MFG. Co., Appellants.

First Department, January 26, 1948.

*Edward K. Hanlon* of counsel (*Quentin J. De Fazio* with him on the brief; *Beekman & Bogue,* attorneys), for appellants, appearing specially and solely for the purpose of this appeal.

*Hyman D. Lehrich* of counsel (*Lehrich & Lehrich,* attorneys), for respondent.

CALLAHAN, J. The defendants are copartners doing business under the firm name of Desmond-Stephan Mfg. Co. They are residents of Urbana, Ohio, where they also operate a plant for the manufacture of grinding wheel dressers and cutters, machinists' and utility vises, and similar products. This is the only plant or factory maintained by the defendants, from which their products are shipped.

Pursuant to section 229-b of the Civil Practice Act, the summons and complaint in this action for breach of contract were served on each of three persons (L. Best Co., Surpless, Dunn & Co., Inc., and Kern & Collins, Inc., hereinafter called Best, Surpless, and Kern, respectively) alleged to be in charge of the defendants' business conducted in this jurisdiction, and also by registered mail with notice directed to the defendants themselves in accordance with the statute.

The material portion of the pertinent statute provides as follows: " § 229-b. *Service of summons on nonresident natural person doing business in this state.* When any natural person or persons not residing in this state shall engage in business in this state, in any action against such person or persons arising out of such business, the summons may be served by leaving a copy thereof with the complaint with the person who, at the time of service, is in charge of any business in which the defendant or defendants are engaged within this state, and any summons so served shall be of the same legal force and validity as if served personally on such nonresident person or persons so engaging in business in this state within the territorial jurisdiction of the court from which the summons issues, provided that a copy of such summons and complaint together with a notice of such service upon such person in charge of such business according to the provisions of this section shall be forthwith sent to such nonresident person or persons by registered mail, return receipt requested."

The statutory requirement for doing business in this State is not satisfied unless a substantial part of the business is conducted within the State and the person in charge thereof invested with general powers of judgment and discretion (*Yeckes-Eichenbaum, Inc.,* v. *McCarthy,* 290 N. Y. 437, 444).

In the light of this test it would appear that Best was not a person upon whom process might be served for the purpose of obtaining jurisdiction over the defendants.

We consider that the question in this case is whether the defendants were doing business in this State within the purview of the statute (Civ. Prac. Act, § 229-b) through the activities of Surpless and Kern as persons in charge of such business so as to be amenable to the service of process in this action.

The defendants have no employees as distinguished from corporate agents in the State of New York. The executive office of the company is located at their plant in Ohio, where the books of account and other records of the firm are kept. The defendants do not maintain any bank account in this State. All orders are subject to approval and acceptance or rejection by the defendants at the factory outside the State.

It appears that Surpless and Kern were manufacturers' representatives whose facilities were engaged by the defendants in the promotion and sale of their products. The defendants employed Surpless to act as their domestic selling agent in the State of New York and throughout most of the United States and Canada. They were similarly represented by Kern

in connection with their export trade outside the United States and Canada. It further appears that Surpless and Kern also acted for other manufacturers in a capacity similar to that in which they acted for the defendants. These sales representatives maintained their own offices at their own expense in the city of New York.

The defendants' contract with Surpless assigned a specified territory to that agent and provided for an annual salary of $2,400, plus 10% on all sales in excess of $24,000 per year. There was an additional $50 per month to be paid to Surpless '' for the warehousing, handling, invoicing, etc., of New York and Chicago's stocks, and for the billing and handling of collections on shipments that it may be necessary to invoice through you ''. The contract provided for all shipments to be invoiced direct from the factory to customers, except that certain shipments to specified locations in New England and metropolitan New York were to be invoiced through Surpless. When the defendants' merchandise was invoiced through the agent, it was provided that settlement was to be made by check of the agent remitted to the defendants monthly with a statement showing charges and collections. The agent was to carry a consigned stock of certain products manufactured by the defendants, out of which sales were to be invoiced by the agent at jobber's prices. Copies of invoices on all shipments charged direct by the defendants were to be sent to the agent covering sales in the latter's territory. Instructions as to prices were to be given by the defendants, and only orders accepted by them were to be deemed sales. The agent was not to solicit trade for a similar product. While it is true that in regard to the carrying of stock by Surpless and its shipment from this point the business as actually conducted was not entirely in accord with the provisions of the Surpless contract, in most respects the agent performed services and was compensated pursuant to the contractual arrangements between the parties. The name of the defendants' company was not carried on the office door of Surpless, but did appear on the building directory. The defendants also maintained a telephone listing and distributed catalogues showing the same address as this agent for their New York sales office.

The defendants engaged the services of Kern to succeed the plaintiffs as their '' export office '' in New York and representative for foreign sales. The respective contracts pursuant to which the defendants employed the plaintiffs and Kern after them as their agent for the foreign market manifest a degree

of similarity showing an established *modus operandi* for this phase of the defendants' business conducted in this State. It was provided that the defendants were to fix prices and pay a fixed commission to their agent for the export trade. The activities or services rendered by their export representative in the dispatch of the defendants' foreign orders included the making of arrangements for the securing of licenses, priorities, letters of credit, the drawing of drafts, and the forwarding and shipment of goods. The agent was not allowed to promote the sale of any similar or competitive product without the express permission of the defendants. The authority was also given to Kern to select the best obtainable sales representatives in the foreign territory assigned to the agent " and make contracts with such parties as in its judgment are for the Manufacturer's best interest ". All inquiries received by the defendants regarding sales in foreign territories were to be referred to Kern, and all correspondence pertaining to the export business of the defendants was to be handled exclusively by this agent. The defendants agreed to supply the " export office " with suitable advertising literature and all stationery necessary for the proper conduct of the export business. The stationery as well as the advertising matter and catalogues distributed to the trade carried the local address of the sales representative as the export office of the defendants in New York. The name of the defendants' company was listed on the building directory and office door of Kern and also appeared in the telephone directory alongside the telephone number of this sales agent. It was customary for the latter to accept orders in New York in the name of the defendants and at their price to be forwarded to the defendants in Ohio. While it is true that the right to reject orders was reserved to the defendants, it does not appear that this was done in any instance. The export agent was accustomed to select the facilities for transportation of the defendants' goods as well as arrange the details of shipment and the terms of carriage. The sufficiency of any letter of credit established by a purchaser was subject to the approval of the defendants' foreign sales representative. The latter on behalf of the defendants presented the documents of title together with the drafts for payment of shipments. Checks in payment of goods were received to the order of the defendants in some instances, and others were drawn to the order of the sales agent. The former were transmitted to the defendants, who made settlement in due course for charges advanced and commissions payable on the sales. The checks drawn to the

agent's own order were deposited in a special account and the proceeds remitted to the defendants after deduction of shipping and other charges.

In short, we think that enough has been shown to indicate that the defendants carried on a major portion of their selling activities through the offices of their domestic and foreign sales representatives in this jurisdiction. While the manufacturing phase was confined to Ohio and all orders were subject to approval at that point, the selling end constituting a substantial part of the defendants' business was conducted in this State. Certainly it was held out to the public that the defendants maintained a " sales office " and an " export office " in the city of New York. It is true that their representatives handling domestic and foreign sales were independent contractors to some extent and maintained their own offices and business facilities. Nevertheless, on the record in this case there would seem to be no gainsaying the fact that they were agents invested with general powers involving judgment and discretion in connection with the defendants' business and the advancement of the defendants' interests.

In cases of this sort it is the cumulative significance of all the activities conducted in this jurisdiction rather than the isolated effect of any single activity that is determinative on the question of, doing business in the State. We conclude that the defendants were engaged in business in this State to an extent sufficient to subject them to the jurisdiction of our courts and that the service of process on Surpless and Kern as their agents was properly made under section 229-b of the Civil Practice Act (*International Shoe Co.* v. *Washington,* 326 U. S. 310; *International Harvester Co.* v. *Kentucky,* 234 U. S. 579; *Yeckes-Eichenbaum, Inc.,* v. *McCarthy,* 290 N. Y. 437, *supra; Tauza* v. *Susquehanna Coal Co.,* 220 N. Y. 259).

This conclusion has been reached without overlooking the case of *Bank of America* v. *Whitney Bank* (261 U. S. 171), where the question was whether a national bank having its banking house and usual place of business in New Orleans, Louisiana, was doing business in such manner as to warrant the inference that it was present in New York for jurisdictional purposes. It appears that various transactions were conducted in this jurisdiction by local correspondents on behalf of the foreign bank. The Supreme Court held that the local business was being done by the correspondent banks and not by the foreign banking institution itself. There was no claim that the correspondent banks were exercising judgment or discre-

tion in relation to the business of their principal, nor was there any representation that the foreign bank maintained an office for the transaction of business in this jurisdiction. Furthermore, in that case no statutory provision for service of process was being considered. Nor have we overlooked the decision of this court in *Greenberg* v. *Lamson Brothers Co.* (273 App. Div. 57) involving a similar question with respect to which, however, a determination contrary to the present holding was reached on facts readily distinguishable from the situation in the case at bar.

The order appealed from should be affirmed, with $20 costs and disbursements, with leave to the defendants to answer within ten days after service of order with notice of entry on payment of said costs.

GLENNON, J. P., DORE, COHN and VAN VOORHIS, JJ., concur.

Order unanimously affirmed, with $20 costs and disbursements, with leave to the defendants to answer within ten days after service of the order, with notice of entry thereof, on payment of said costs. [See *post*, p. 877.]