**EXECUTIVE PROPERTIES, INC., an Arizona corporation, Plaintiff,**

v.

**Max SHERMAN and Louis B. Tishler, Jr., solely as Trustee under Trust Agreement dated April 1, 1959, known as Maryland Plaza Trust, and Louis B. Tishler, Jr., Defendants.**

**Civ. No. 4863.**

United States District Court
D. Arizona.

Nov. 5, 1963.

Foster G. Mori and David Dietz, Phoenix, Ariz., for plaintiff.

Charles L. Hardy, Kramer, Roche, Burch & Streich, Phoenix, Ariz., for defendants.

EAST, District Judge.

The defendants have moved for an order dismissing the complaint and cause of plaintiff on the main ground of a "lack of jurisdiction over the persons of the defendants" in these diversity proceedings removed from the Superior Court of the State of Arizona for the County of Maricopa.

The plaintiff's complaint alleges in substance that the defendants Max Sherman and Louis B. Tishner, Jr., as Trustees on behalf of their trust, and the defendant Louis B. Tishner, Jr., individually, executed a written contract dated on or about December 19, 1962, and delivered in Phoenix, Arizona, whereby the plaintiff, an Arizona corporation, at all times doing business within the State of Arizona, was authorized to procure a purchaser for real property situate within the State of Arizona and where the defendants agreed to pay the plaintiff for such service the sum of $30,000.00;

Further, that the plaintiff did find and present to the defendants a willing and able purchaser for the real property and did otherwise fully perform the contract on its part to be performed, but that the defendants did repudiate the agreement and have failed to perform as agreed; and

Further, that during some of the negotiations culminating in the contract aforesaid, the defendant Max Sherman, acting for himself and as agent for the defendant Louis B. Tishner, Jr., was

personally present in the State of Arizona.

It appears from defendants' petition for removal herein that during all of the pertinent times herein each of the defendants have been and are nonresidents of the State of Arizona and have been and are residents and citizens of the State of Illinois.

"Mr. Max Sherman
2701 West Chase and
West Rogers Park
Chicago, Illinois"

It appears from an affidavit of mailing filed in the aforesaid state proceedings that service of summons and complaint in the cause upon the defendants was had by enclosing a copy thereof "in a securely sealed envelope with postage prepaid thereon, sent by registered mail, return receipt requested, to * * *" each of the following named persons:

"Mr. Louis B. Tishner, Jr.
Ressman & Tishner
Attorneys at Law
Suite 620, 110 S. Dearborn St.
Chicago 3, Illinois."

And, further, that the affiant "received the return receipt attached hereto signed by Max Sherman" and "by J. Borowshi for L. Tishner."

█ *In personam* jurisdiction of this Court "depends on whether the service [of summons and complaint as aforesaid] was sufficient to give the [Arizona] state court jurisdiction." Curtis Publishing Co. v. Cassel, 302 F.2d 132, 134 (10th Cir. 1962.)

It seems that service in the Arizona court was had pursuant to Rule 4(e) (2) of the Arizona Rules of Civil Procedure, 16 A.R.S. Cum. pocket part 8, 1962 (Rule 4):

"When the defendant * * * is a person, partnership, * * * which has caused an event to occur in this state out of which the claim which is the subject of the complaint arose, service may be made as herein provided, and when so made shall be of the same effect as personal service within the state."

"(a) Registered mail. When the whereabouts of a defendant outside the state is known, the serving party may deposit a copy of the summons and complaint in the post office, registering it with a return receipt requested. Upon return through the post office of the registry receipt, he shall file an affidavit with the court showing the circumstances warranting the utilization of the procedure * * *. This affidavit shall be prima facie evidence of personal service of the summons and complaint * * *."

The theory of the defendants' contention of lack of jurisdiction over the persons of the defendants is that the service of summons and complaint as had in the state court pursuant to Rule 4 is not sanctioned under the Constitution of the State of Arizona in that Article VI, § 13, A.R.S., thereof limits the process of the Superior Court "to all parts of the state."

And, further, that to assert *"in personam"* jurisdiction upon the defendants through such service of summons and complaint violates the due process clause of the Constitution of the United States.

These theories of lack of jurisdiction over the persons and failure of federal due process in the Arizona court are each untenable and must fail.

█ I suggest that the defendants confuse the concept of "process" as used in the Arizona Constitution—being the court's process or power to enforce its valid judgments and orders—with the concept of "notice of process." As for the constitutional concept of "process," Arizona Rule 4 purports to give to the Arizona court the same procedure to enforce its subject matter jurisdiction to

finally adjudicate claims (local or transitory causes of action) arising out of *"an event" occurring within the state* against all persons, be they residents or nonresidents of Arizona. This is a procedure to aid the Court in entering a valid judgment,[1] and I conclude that Rule 4 does not purport to extend the process of the Arizona court beyond the "parts of the state," contra to Article VI, § 13.

 Of course, notice of process must sometimes extend beyond geographic jurisdictional limitations of a court to meet the "reasonable notice" requirements of due process. Pennoyer v. Neff, ante, 95 U.S. 714, 24 L.Ed. 565 (1877) is the classic teacher of this concept. In this regard, personal service or receipt of the summons and complaint is the epitome of reasonable notice, as it then becomes actual unless one voluntarily turns his back. Rule 4 contemplates that "personal service of the copy of the summons and the complaint" will be had, and only provides that compliance with it "shall be prima facie evidence of personal service * * *." In any event, any suggested lack of "reasonable notice" to the defendants of the state proceedings is moot, for their petition for removal acknowledges they received the copies of summons and complaint as mailed to them, respectively.

 Our inquiry now extends to whether the Arizona court, or this Court for that matter, in proceeding under the procedural Rule 4 to adjudicate a valid *in personam* judgment against the nonresident defendants, does violence to the due process guarantee under the Federal Constitution. It seems that the Supreme Court of Arizona has not dealt with either the state or federal constitutionality of Rule 4, and it would appear that comity between state and federal exercise of adjudication might dictate abstention here, with a deference to the Arizona state court for decision. City of Meridian v. Southern Bell Tel & Tel Co., 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed.2d 562 (1959); Harrison v. N. A. A. C. P., 360 U.S. 167, 19 S.Ct. 1025, 3 L.Ed.2d 1152 (1959) [2].

 However, since I conclude that Rule 4 is not ambiguous or ill-defined, "fairly open to interpretation" or susceptible to serious challenge under the Arizona Constitution, I am under obligation to face up to and deal with the federal constitutional question here presented. United States v. Bureau of Revenue of the State of New Mexico, 291 F.2d 677, 679 (10th Cir. 1961).[3]

Rule 4 was drafted by the Committee on Rules of Civil Practice and Procedure of the Arizona State Bar Association. The Committee's comment as to the rule's intended constitutional scope is enlightening:

> "The choice of the general phrase used in the amendment is intended to give to Arizona residents the maximum privileges which the Constitution of the United States permits them to have, * * *." 16 A.R.S. Cum. Pocket Part 8 (1962).

The "maximum privileges" under the Federal Constitution as to acquiring *in*

---

1. Heat Pump Equipment Co. v. Glen Alden Corp., 93 Ariz. 361, 380 P.2d 1016 (1963) holds that Rule 4 "relates to procedural matters, within the meaning of Article VI, § 5 of the State Constitution, and is a valid exercise of the rule-making power of this Court."

2. "Proper exercise of federal jurisdiction requires that controversies involving unsettled questions of state law be decided in the state tribunals preliminary to a federal court's consideration of the underlying federal constitutional questions." City of Meridian, supra, 358 U.S. p. 640, 79 S.Ct. p. 456, 3 L.Ed.2d 562.

"* * * the federal courts should not adjudicate the constitutionality of state enactments fairly open to interpretation until the state courts have been afforded a reasonable opportunity to pass upon them." Harrison, supra, 360 U.S. p. 176, 79 S.Ct. p. 1029, 3 L.Ed.2d 1152.

3. Admonishes that where the state statute is clear and leaves no room for construction: "* * * the rule of abstention * * * does not permit the federal district courts to defer to the state courts for decision of federal constitutional questions."

*personam* jurisdiction over nonresident defendants has been redefined in recent years by three landmark Supreme Court cases: International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L. Ed. 95 (1945); McGee v. International Life Insurance Co., 355 U.S. 220, 78 S. Ct. 199, 2 L.Ed.2d 223 (1957), and Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

The basic principle of extending a forum's jurisdiction over nonresidents was laid down in International Shoe, 326 U.S. at p. 316, 66 S.Ct. at p. 158, 90 L.Ed. 95, where the court recalled and reasoned that:

> "Historically the jurisdiction of courts to render judgment *in personam* is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. Pennoyer v. Neff, 95 U.S. 714, 733 [24 L.Ed. 565].
>
> "But now that the *capias ad respondendum* has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

In McGee, the court acknowledges the teaching of International Shoe and notes that:

> "Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over * * * nonresidents. * *"
> 355 U.S. 222, 78 S.Ct. 200, 2 L.Ed. 2d 223,

and then held that the State of California had the minimum contacts necessary to exercise *in personam* jurisdiction over a Texas insurance company when that company's *only* contacts with California were:

1) The insurance policy was delivered in California;

2) Premiums were mailed from California;

3) The insured died in California; and

4) The beneficiary resided in California.

Hanson acknowledged the International Shoe doctrine of "minimum contacts" but failed "to find such contacts in the circumstances of this case * * *" as "the record discloses no solicitation of business in that State either in person or by mail." And, further " * * * *[t]he cause of action in this case is not one that arises out of an act done or transaction consummated in the forum State."* [Italics supplied.] 357 U.S. 251, 78 S.Ct. 1238, 2 L.Ed.2d 1283.

This language from Hanson lends great significance to the language of Rule 4, which subjects a person who " * * * has caused an event to occur in this state out of which * * * the [cause of action] arose * * *" to *in personam* jurisdiction.

At least one other state has adopted a statute designed to take advantage of the "minimum contacts" principle enunciated in International Shoe. In 1956, Illinois revised its Civil Practice Act in part as follows:

"§ 17. Act submitting to jurisdiction—Process

(1) Any person, whether or not a citizen or resident of this State, who * * * does any of the acts hereinafter enumerated, thereby submits said person, * * * to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of said acts:

(a) The transaction of any business within this State;

(b) The commission of a * * * tortious * * * within this State;

(c) The ownership, use, or possession of any real estate situated in this State;

(d) Contracting to insure * *." Ch. 110 Ill.Ann.Stat. § 17(1) (1956).

The scope and procedural effect of this statute and Rule 4 are identical. The Illinois statute takes four subsections to accomplish what the Arizona rule does in one inclusive sentence.

Section 17 was held to be constitutionally sound by the Illinois Supreme Court in Nelson v. Miller, 11 Ill.2d 378, 143 N.E. 2d 673 (1957) under the teachings of International Shoe and McGee, supra. The United States Court of Appeals for the Seventh Circuit has on at least two occasions held Illinois § 17 per se to be valid under the Federal Constitution, but in the cases before it failed to find present the necessary and requisite "minimum contacts" by the nonresident defendants within the forum state. Orton v. Woods Oil & Gas Co., 249 F.2d 198 (7th Cir. 1957); and Kaye-Martin v. Brooks, 267 F.2d 394 (7th Cir. 1959).

So, I conclude that Rule 4, per se, is not violative of the due process clause of the United States Constitution and that the maximum privileges permissible to the Arizona court under the rule are to be determined by applying the International Shoe formula to the within-state-contact facts of each case.

As for the case before us, the following in-Arizona contacts appear on the record:

1) Plaintiff, one of the contracting parties, is and was at all pertinent times an Arizona corporation;

2) The nonresident defendants own real estate situate in Arizona, the subject matter of the contracts, and over which the claimed brokerage commission claim held by plaintiff arose;

3) The entire unilateral performance by plaintiff of the contract out of which the claim (cause of action of plaintiff) for a brokerage commission is based was wholly had within Arizona; and

4) The defendants caused their executed documents to be sent into Arizona to be acted upon in Arizona, and one of the defendant trustees was actually present within Arizona at the time of executing escrow instructions with reference to the exchange agreement.

It is from these events, which the defendants "caused * * * to occur in (Arizona), out of which (plaintiff's) claim * * * 'which is the subject of the complaint arose, * * * '" Manifestly, the defendants had more than the requisite "minimum contacts" with Arizona under the formula of International Shoe, supra, in order to affix *in personam* jurisdiction, and, furthermore:

"It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State." McGee, supra, 355 U.S. p. 223, 78 S.Ct. p. 201, 2 L.Ed.2d 223.

In view of the events which the defendants have caused to occur, being all things necessary to bring about and establish an obligation on their part, within the State of Arizona, it would indeed offend "traditional notions of fair play and substantial justice" to leave the defendants immune from the orderly procedures of Arizona's court to adjudicate and reduce that obligation to a valid *in personam* judgment. No longer must the sheriff search out and produce a defendant in person to the forum court. Instead, modern concepts of the orderly administration of justice require of the person who comes or extends himself into a forum's territory and breaches a duty or incurs an obligation therein, that he himself return upon reasonable call and answer *in personam*. The defendants' motion to dismiss for lack of personal jurisdiction of them should be denied.

The defendants' motion to dismiss on the grounds that the complaint fails to state a claim upon which relief can be granted is patently without merit and should be denied.