ROBERT L. ABBOTT AND MARY ALICE ABBOTT, HUSBAND AND WIFE, PETITIONERS, *v.* THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA AND HONORABLE GRANT L. BOWEN, JUDGE THEREOF, RESPONDENTS. SCHERRY HARRAH, REAL PARTY IN INTEREST.

No. 7186

August 29, 1974                    526 P.2d 75

*Guild, Hagen & Clark, Ltd.,* and *Thomas J. Hall,* of Reno, for Petitioners.

*Robert E. Rose,* District Attorney, Washoe County, for Respondents.

*Swanson, Swanson & Capurro,* of Reno, for Real Party in Interest.

## OPINION

By the Court, ZENOFF, J.:

Scherry Harrah, Richard Wiseman and Robert Abbott were

the principal and controlling stockholders of Magnatec Corporation, a Nevada corporation, whose principal place of business was in Reno, Nevada. Harrah resides in Nevada, Wiseman and Abbott are residents of California. All three were active members of the Board of Directors of the corporation and attended director's meetings in Nevada. When the corporation fell into financial difficulties Abbott became the paid chairman of an executive committee formed to handle the responsibility of solving the corporation's financial problems.

Abbott, as chairman of the special committee, apparently promoted the idea of obtaining a loan for the corporation. A loan in fact was negotiated from the First National Bank of Nevada in Reno. To secure the loan the bank required the written guaranties of the three individuals. The guaranties were executed by written agreement which included the individuals' commitment to indemnify each other if one of them was called upon to pay the bank loan to the corporation.

At the time of the loan from the bank Wiseman and Abbott acceded to Harrah's request that they execute promissory notes in her favor to take effect in the event the bank caused her to pay the entire loan made by the bank to the corporation. Abbott, in California, requested that a note for his share be delivered to him in California because at the time he was too busy to come to Nevada just to sign the note. A note was so delivered to him, he signed it in California and it was returned to Harrah in Nevada.

In course of time Harrah was called upon by the bank to pay the corporate obligation, which she did. She then made claim upon Abbott for payment of his note of $8,333.00 and brought suit thereon when he failed to pay. These proceedings followed.

Petitioner Abbott contends that the Nevada court lacks jurisdiction over him because the promissory note upon which the lawsuit is based was executed in California and that the action should be brought there. Harrah's claim of proper jurisdiction is based on NRS 14.065(2)(a) which provides that:

"Any person who, in person or through an agent or instrumentality, does any of the acts enumerated in this subsection thereby submits himself and, if an individual, his personal representative to the jurisdiction of the courts of this state as to any cause of action which arises from the doing of such acts: . . . Transacting any business or negotiating any commercial paper within this state; . . ."

This court approved the constitutionality of NRS 14.065 in Certain-Teed Products Corp. v. Second Judicial District Court,

87 Nev. 18, 479 P.2d 781 (1971). We said: "The constitutional concern is whether the transaction of business in Nevada produced effects here of such significance that it is not unfair to allow this state to resolve resulting litigation. In short, are traditional notions of fair play and substantial justice offended? . . ."

Certain-Teed, supra, McGee v. International Life Ins. Co., 355 U.S. 220 (1957), and Hanson v. Denckla, 357 U.S. 235 (1958), seem to set forth the criteria defining the outer limits of in personam jurisdiction over an out-of-state defendant based upon a single act within the forum state. First, the defendant must purposefully avail himself of the privilege of acting in the forum state or of causing important consequences in that state. Second, the cause of action must arise from the consequences in the forum state of the defendant's activities. Finally, the activities of the defendant or the consequences of those activities must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Except for Abbott's mechanical step in executing his signature to the promissory note in California the entire transaction between Scherry Harrah and the petitioner took place in and had to do with events in the state of Nevada. Magnatec Corporation was a Nevada corporation doing business in Nevada. Abbott was a principal in the stock ownership and operation of the business of the corporation in Nevada. He acted as executive head of the committee formed for the underlying purpose evidenced by the bank loan, participated in all meetings in Nevada that led to the procurement of the bank loan and gave his personal promise in Nevada to reimburse Scherry Harrah in the event she had to pay the obligation to the bank. It cannot be said that he had no connections with this state. McGee, supra; Melvin Pine & Co. v. McConnell, 76 N.Y.S.2d 279 (1948). In cases of this sort it is the cumulative significance of all the activities conducted in the jurisdiction rather than the isolated effect of any single activity that is determinative. Melvin Pine & Co., supra.

The contacts with Nevada fulfill our criteria pronounced in Certain-Teed, supra. We need not concern ourselves at this point with deciding whether or not the signing of the note in California constituted "negotiating any commercial paper within

this state" under NRS 14.065(2)(a). Modern concepts of the orderly administration of justice require that a person who comes or extends himself into a forum's territory and encourages the obligation therein appear upon reasonable call and answer in personam. Excutive Properties, Inc. v. Sherman, 223 F.Supp. 1011 (D.Ariz. 1963).

Petition denied.

MOWBRAY and GUNDERSON, JJ., concur.

BATJER, J., dissenting:

I respectfully dissent. This petition for a writ of prohibition challenges the service of process upon the petitioners made pursuant to NRS 14.065(2)(a).

Scherry Harrah, the real party in interest in this original proceeding, filed a complaint against Robert L. Abbott and Mary Alice [Marialyce] Abbott, husband and wife, the petitioners herein, and against Richard M. Wiseman and Margaret A. Wiseman, husband and wife, seeking a judgment against the Abbotts, jointly and severally, in the sum of $8,333.33, plus interest, and a similar sum jointly and severally from the Wisemans.

The Abbotts, who were personally served with process in the state of California, moved the district court to quash the service for want of jurisdiction. Their motion was denied and this proceeding seeks to prohibit the district court from further considering Scherry Harrah's claim for relief against them.

The Abbotts, Scherry Harrah and the Wisemans were the majority stockholders in Magnatec Corporation, a Nevada corporation, sometimes hereinafter referred to as "the corporation" which found itself in financial trouble in the spring of 1970. A loan of $25,000 was eventually negotiated by officers of the corporation through an office of the First National Bank in Reno, Nevada, hereinafter referred to as "the bank," but only with the additional security of a continuing guaranty personally executed by Scherry Harrah, the Wisemans and the Abbotts.

Scherry Harrah, the Wisemans and the Abbotts, executed a written contract agreeing that if any one of the parties happened to be required to pay the bank under the continuing guaranty that the party or parties making such payment would be reimbursed by the other parties. In addition, Scherry Harrah required the Abbotts and the Wisemans to each jointly and severally execute a promissory note in her favor in the principal sum of $8,333.33, plus interest, payable upon demand if

Scherry Harrah was required to repay the corporation's loan to the bank.

The Abbotts lived in the state of California. Richard M. Wiseman, who was the president of Magnatec Corporation, requested Glen Speidel, a director and member of the executive committee of the corporation to take the documents to the state of California for the Abbotts' signatures.

It is not clear from the record just where Speidel picked up the documents before taking them to the Abbotts in California, however, the promissory note was prepared on office stationery of Swanson and Swanson, Attorneys-at-Law, Reno, Nevada. The record seems to indicate that Speidel also carried the continuing guaranty for signature. This can be inferred from the fact that the promissory note, agreement and continuing guaranty were each signed by the Abbotts, and were each dated June 3, 1970. NRS 47.250(12); NRS 104.3114(3).

The corporation defaulted in its payment of the loan. The bank notified the guarantors of the default and demanded payment. This demand was not met. After a subsequent demand Scherry Harrah paid the bank the sum of $27,266.30, and then in an effort to collect from her co-guarantors brought this lawsuit.

In her complaint, Scherry Harrah alleged that the petitioners, as residents of the state of California, if served pursuant to NRS 14.065, were subject to the *in personam* jurisdiction of the district court, by virtue of the fact that they transacted business in the state of Nevada and had negotiated, or caused to be negotiated, commercial paper within the state of Nevada.

Although the district court entered its order "in favor of the plaintiff's position," it did not specifically find, that the petitioners either negotiated, or caused to be negotiated, commercial paper in the state of Nevada, or that they transacted business in the state of Nevada, or both; but that finding must be inferred.

1. Did the Abbotts transact any business in this state? With reference to Mary Alice [Marialyce] Abbott, there is absolutely no evidence in the record to connect her with the state of Nevada for the transaction of business or otherwise. With reference to Robert L. Abbott, any conduct on his part in connection with the business of Magnatec Corporation prior to negotiations with the First National Bank of Nevada for the $25,000 loan to the corporation is not within this cause of action and should not be considered. NRS 14.065(3) limits the scope of that statute to causes of action from the acts enumerated therein.

In Certain-Teed Prods. v. District Court, 87 Nev. 18, 479 P.2d 781 (1971), this court said: "The broad language used in the statute [NRS 14.065] discloses a legislative intention to reach the outer limits of federal constitutional due process. Such phrases as 'transacting any business within this state,' 'negotiating any commercial paper within the state,' 'committing a tortious act within this state,' are almost without restriction or limitation. . . . The United States Supreme Court decisions of McGee v. International Life Ins. Co., 355 U.S. 220 (1957), and Hanson v. Denckla, 357 U.S. 235 (1958), when read together, seem to set forth the criteria defining the outer limits of in personam jurisdiction over an out-of-state defendant based upon a single act within the forum state. First, the defendant must purposefully avail himself of the privilege of acting in the forum state or of causing important consequences in that state. Second, the cause of action must arise from the consequences in the forum state of the defendant's activities. Finally, the activities of the defendant or the consequences of those activities must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." 87 Nev. at 23, 479 P.2d at 784.

The record shows that Robert L. Abbott was in the state of Nevada on June 1, 1970. The only evidence in the record that would indicate that Robert L. Abbott even discussed the loan from the bank to the corporation, while physically present in this state, is the statement by Richard M. Wiseman in his affidavit that: "both Mr. Abbott and I orally agreed in Nevada that we would be responsible for one-third respectively of the $25,000.00 loan if the corporation did not pay it."

Between Abbott and Wiseman an oral agreement may have been reached in Nevada which was later formalized, but the statement by Richard M. Wiseman cannot be relied upon as evidence that Robert L. Abbott, while physically present in Nevada, agreed with Scherry Harrah to be responsible for one-third of the $25,000 loan if the corporation failed to pay. There is no evidence that Scherry Harrah and Robert L. Abbott ever discussed or formalized the basis for the promissory note or the agreement in this state.

The consequences in the state of Nevada which arose from the Abbotts' activities, to-wit, their signatures on the continuing guarantee, was the loan of $25,000 from the bank to the corporation. This cause of action did not arise from the default on that loan. The promissory note from the Abbotts to Scherry Harrah upon which this cause of action arose was

executed and defaulted upon in the state of California and did not arise from the consequence of the Abbotts' activities in the state of Nevada.

The criteria of Certain-Teed Prods. v. District Court, supra, is not in the disjunctive. Each of the requirements must be met. Limited to this cause of action there is no evidence that Robert L. Abbott purposefully availed himself of the privilege of acting in the state of Nevada. The cause of action did not arise from the consequence of Robert L. Abbott's activities in Nevada but, instead, arose as a result of his signing the agreement and promissory note in the state of California.

In Hanson v. Denckla, supra, the United States Supreme Court refused to approve in personam jurisdiction over a non-domiciliary and stated: ". . . [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." 357 U.S. at 253.

2. Although, the majority concluded: "We need not concern ourselves at this point with deciding whether or not the signing of the note in California constituted the 'negotiating of any commercial paper within this state' under NRS 14.065 (2)(a)." I believe it necessary to discuss whether the Abbotts, or either of them, negotiated, or caused to be negotiated, commercial paper within the state of Nevada. NRS 104.3101–NRS 104.3805, inclusive.

Scherry Harrah argues that Speidel was the agent of the Abbotts in his trip to the state of California to obtain their signatures. From the record it appears that Speidel was not acting on his own volition but upon Richard Wiseman's request.

The promissory note which was prepared by Scherry Harrah's attorney was placed in the hand of the courier, Speidel, either by him or by Richard M. Wiseman, the president of the corporation. Speidel took it to the Abbotts for their signature and immediately returned it to Scherry Harrah's attorney in the state of Nevada. Under these facts, negotiation was at the place of delivery in California, since it was there that the Abbotts, as makers, lost control over the note. In choosing the courier, or in taking advantage of his selection by Richard M. Wiseman, as well as that particular method of communication, Scherry Harrah impliedly authorized the Abbotts to return the note through Speidel. His services were directly beneficial to the corporation and Scherry Harrah, and were only indirectly beneficial to the Abbotts if the loan assisted the corporation.

Our statutes provide that an instrument is negotiated by

delivery, and that delivery with respect to instruments means the voluntary transfer of possession. NRS 104.3202(1);[1] NRS 104.1201(14);[2] and NRS 104.3102(1)(e).[3] If a maker delivers to a stranger, his promissory note which is made to a payee or order, with an understanding, either express or implied, that the stranger will deliver the note to the payee on behalf of the maker, the stranger becomes the agent of the payee and delivery is sufficient to effect negotiation.[4] Here the Abbotts voluntarily transferred possession of the note to Speidel in the state of California. I believe it was error for the trial court to find that the promissory note from which this cause of action arose was negotiated in this state.

The maintenance of this suit in this state against the petitioners offends "traditional notions of fair play and substantial justice." International Shoe Company v. State of Washington, 326 U.S. 310 (1945). I believe a writ of prohibition should issue.

THOMPSON, C. J., concurring.

---

[1]NRS 104.3202(1): "Negotiation is the transfer of an instrument in such form that the transferee becomes a holder. If the instrument is payable to order it is negotiated by delivery with any necessary endorsement; if payable to bearer it is negotiated by delivery."

[2]NRS 104.1201(14): "GENERAL DEFINITIONS [Effective until July 1, 1975.] Subject to additional definitions contained in the subsequent articles of this chapter which are applicable to specific articles or parts thereof, and unless the context otherwise requires, in this chapter: . . . 14. 'Delivery' with respect to instruments, documents of title, chattel paper or securities means voluntary transfer of possession."

[3]NRS 104.3102(1)(e): "In this article unless the context otherwise requires: . . . (e) 'Instrument' means a negotiable instrument."

[4]By analogy, respecting the delivery of deeds, compare: Hall v. Hall, 168 S.W.2d 10 (Ky.App. 1943); Frederick v. Frederick, 178 N.W.2d 834 (N.D. 1970); Capozzella v. Capozzella, 196 S.E.2d 67 (Va. 1973.)