**POCAHONTAS FIRST CORPORATION, Plaintiff,**

v.

**VENTURE PLANNING GROUP, INC., and Daniel W. Hollis, Defendants.**

**No. CV–R–83–120–ECR.**

United States District Court, D. Nevada.

Sept. 22, 1983.

Phil Hiroshima and Mark Gordy Henderson, Sacramento, Cal., for plaintiff.

Wayne A. Shaffer, Reno, Nev., for defendants.

## ORDER

EDWARD C. REED, Jr., District Judge.

This matter is before the court on defendants' motions to quash service of process, to dismiss, and for a more definite statement. Defendant Venture Planning Group, Inc., (hereinafter VPG) is a Georgia corporation and defendant Daniel W. Hollis is a resident of the State of Georgia. Plaintiff has invoked the diversity jurisdiction of this court pursuant to 28 U.S.C. § 1332.

Defendant Daniel Hollis was president of VPG on March 13, 1982, when plaintiff and

VPG entered into a contract for the marketing of time sharing condominium units located in Douglas County, Nevada. The contract was signed in Georgia. There is no provision in the contract for choice of law or forum. Plaintiff has filed an affidavit which indicates that Mr. Hollis made a couple of trips to Nevada in his corporate capacity to conduct negotiations and attend to business matters regarding the contract into which the corporate parties entered.

Plaintiff has asserted four causes of action relative to the subject contract. These are for rescission, money had and received, fraud and deceit, and conversion.

Defendants base their motion to dismiss on several premises. They argue that plaintiff's action should be dismissed for failure to file return of process in a timely manner and for lack of in personam jurisdiction. Defendant Hollis argues that he should be dismissed as a party defendant on the basis of the fiduciary shield doctrine which he claims insulates himself from the exercise of in personam jurisdiction by this court. Defendants base their motion for a more definite statement on the premise that plaintiff's complaint is vague and ambiguous for failure to attach exhibits specifically incorporated therein by reference.

"Failure to make proof of service does not affect the validity of the service." Fed. R.Civ.P. 4(g). The plaintiff filed proofs of service on June 13, 1983. The affidavits attesting to service indicate that defendant Hollis, both individually and as an officer of VPG, was served with copies of the complaint and summons on May 10, 1983. Although plaintiff did not file its proof of service in the most timely manner, there is no indication of improper service or a willful failure on plaintiff's part to promptly file proof of service. While a certain degree of carelessness or inadvertence does not warrant dismissal of plaintiff's action. The same is true of plaintiff's failure to attach the documents which comprise Exhibit "A" to its complaint. Plaintiff has now served defendants with Exhibit "A". That exhibit is comprised of a copy of the contract which the parties entered into as well as a "component list" ancillary to the contract.

■ The Court notes that defendants appear to have suffered to only a very minimal extent as the result of plaintiff's tardiness. Mr. Hollis and VPG appear to have been personally served. They were, therefore, quickly made aware of the lawsuit against them. It is difficult to see how defendants were prejudiced in a material manner by plaintiff's failure to promptly file proofs of service. A reading of the complaint indicates in a clear manner what the basic substance of plaintiff's grievances are. Plaintiff seeks the return of $24,-380.82 which plaintiff paid to VPG pursuant to the contract the parties entered into. Defendants have not claimed that they did not have in their possession at the time of service a copy of the contract and components list. It is relatively safe to assume that defendants followed the standard business practice of retaining a copy of a contract they had entered into. Be that as it may, defendants were served with Exhibit "A" on June 22, 1983.

The defendants' motion for a more definite statement appears to have been satisfied by plaintiff's service of Exhibit "A" upon defendants.

■ The major issue raised by defendants' motion to dismiss is whether this Court can properly assert in personam jurisdiction over the defendants. The burden rests on the plaintiff to establish that jurisdiction. *Idaho Potato Com'n v. Washington Potato Com'n,* 410 F.Supp. 171, 178 (D.Idaho 1976); *Weller v. Cromwell Oil Company,* 504 F.2d 927, 929 (6th Cir.1974). However, the allegations of the complaint, except as controverted by the defendants' affidavits, are taken as true. *Brown v. Flowers Industries, Inc.,* 688 F.2d 328, 332 (5th Cir.1982). Even where there are conflicts between the facts alleged in the plaintiff's complaint and affidavits and those asserted by the defendants in their affidavits, those conflicts must be resolved in the plaintiff's favor in determining whether a prima facie case for personal jurisdiction has been made. *Ibid.*

It is permissible for a court to decide a pretrial motion to dismiss for lack of personal jurisdiction on the basis of affidavits alone. *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2nd Cir.1981). Such a procedure seems particularly appropriate in the instant case, where the opposing affidavits don't contradict each other as to the material facts. Disagreement is centered on the legal conclusions to be derived from those facts. Where this approach is followed, the plaintiff need make only a prima facie showing of jurisdiction, through its affidavits, to defeat the motion to dismiss. *Ibid.* The allegations of the complaint also are considered. *Lehigh Valley Industries, Inc. v. Birenbaum,* 527 F.2d 87, 92 (2nd Cir.1975). However, the allegations contained in the affidavits and complaint may not be merely conclusory, but must set forth specific facts connecting the defendants with the forum. *Id.* at 93, *Greenspun v. Del E. Webb Corp.,* 634 F.2d 1204, n. 5 (9th Cir.1980).

In a diversity case, the power of a federal court to exercise personal jurisdiction over a nonresident defendant turns on two independent considerations: First, whether the state's long-arm statute is applicable and, if so, second, whether application of the statute is consistent with due process. *Taubler v. Giraud,* 655 F.2d 991, 993 (9th Cir.1981). Where the long-arm statute provides for personal jurisdiction to the full extent allowed by the requirements of due process, only the second consideration (whether application of the statute is consistent with due process) need be determined. *Ibid.* *Taubler* involved California's long-arm statute, Code Civ.Proc. § 410.10, which reads: "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." The opinion held, at page 993, that only due process analysis was required.

Nevada's long-arm statute is found at NRS 14.065. In subsection 2 it enumerates acts which permit personal jurisdiction in the State's courts over a person who is served with summons outside of Nevada. Those acts include transacting business in Nevada, committing a tort within the State,

owning or using Nevada real property, insuring any person or property located in the State, and living in the marital relationship within Nevada (insofar as alimony and child support are concerned).

Opinions of the Supreme Court of Nevada have declared: "The broad language used in the statute discloses a legislative intention to reach the outer limits of federal constitutional due process." *Certain-Teed Products Corp. v. Second Jud. Dist. Ct.,* 87 Nev. 18, 479 P.2d 781, 784 (1971); *Davis v. Eighth Jud. Dist. of State of Nev.,* 97 Nev. 332, 629 P.2d 1209, 1213 (1981). However, federal law is controlling on the issue of due process; state cases, although persuasive, are not binding on the federal courts. *Data Disc, Inc. v. Systems Tech. Assoc., Inc.,* 557 F.2d 1280, n. 3 (9th Cir. 1977). Because Nevada's long-arm statute contemplates that only claims for relief arising from specifically enumerated acts which took place within the State may be reached, it does not provide for personal jurisdiction in all instances which would not violate due process. *Greenspun* at 634 F.2d 1207; *Wells Fargo & Co. v. Wells Fargo Exp. Co.,* 556 F.2d 406, 417 (9th Cir.1977); *see also Shapiro v. Pavlikowski,* 98 Nev. Adv.Op. 162, 654 P.2d 1030, 1031 (1982). Therefore, both the applicability of the State's long-arm statute and the conformity of its application with federal due process requirements must be considered.

The complaint alleges that plaintiff entered into a written agreement with corporate defendant VPG whereunder plaintiff employed VPG as its exclusive agent for the sale of 1248 time share weeks in 24 condominium units situate in Douglas County, Nevada. VPG agreed to use its best efforts to effect the sales. Thereafter, according to the complaint, plaintiff paid $24,380.82 to VPG for expenses purportedly incurred by the latter in connection with its sales efforts. Nevertheless, the complaint declares, VPG did not use its best efforts and did not market the time share weeks. Plaintiff claims to have rescinded the agreement and, in its first claim for relief, seeks restitution of the $24,380.82 from

VPG. The second claim for relief asks judgment against VPG for said sum as money had and received by that defendant for the use and benefit of plaintiff.

The third claim for relief is based on fraud and deceit. It alleges that VPG's employees and agents submitted expense reports to plaintiff, which reports represented that the expenditures had been made on behalf of plaintiff. Actually, plaintiff claims, the monies were expended on behalf of other clients of VPG. Each of the employees and agents was acting within the scope of his authority, according to the pleading, and with the permission, consent and ratification of both defendant VPG and defendant Daniel W. Hollis, president of VPG. The fourth claim for relief is based on the same facts and alleges that VPG's agents and employees converted the $24,-380.82 to VPG's own use, while acting within the scope of their authority and with the permission, consent and ratification of both VPG and its president, Mr. Hollis.

The affidavit of plaintiff's corporate secretary declares that she negotiated some of the terms of the agreement with Mr. Hollis in Douglas County, Nevada, prior to its execution. (The agreement was signed in Georgia). After the agreement had been executed, the affidavit continues, the corporate secretary again met with Mr. Hollis, and two of his Georgia attorneys, in Douglas County, Nevada. They looked over the condominium units, and Mr. Hollis represented that he had been in contact with financial planners in Nevada and elsewhere concerning marketing of the time share weeks. During the same visit to Nevada, Mr. Hollis met with Nevada title company representatives to discuss matters concerning the conveyancing of the time share weeks. In addition, he consulted with plaintiff's attorney in Las Vegas concerning Nevada real estate licensing procedures, and with a Las Vegas real estate appraiser as to the market value of the condominium units.

Nevada's long-arm statute is interpreted liberally so as to reach any enumerated activities within the State not proscribed by federal constitutional due process. *Certain-Teed Products Corp. v. Second Jud. Dist. Ct.,* 87 Nev. 18, 479 P.2d 781, 784 (1971). A contract for the sale of real property has a substantial connection with the state in which the property is situate. *Columbia Briargate Co. v. First National Bank in Dallas,* 713 F.2d 1052 (4th Cir.1983). Although the cumulative effect of all the activities conducted in the jurisdiction are determinative, *Abbott v. Second Judicial District Court,* 90 Nev. 321, 526 P.2d 75, 76 (1974), a purposeful single contact may be sufficient when the cause of action arises from that contact. *Wells Fargo* at 415. The activities that took place in Nevada subsequent to the signing of the agreement, as described in the affidavit of plaintiff's corporate secretary, were meant to facilitate implementation of the agreement and thus benefit VPG; it would not be unreasonable to subject VPG to jurisdiction in Nevada on claims arising from the agreement. *See Data Disc, Inc. v. Systems Tech. Assoc., Inc.,* 557 F.2d 1280, 1288 (9th Cir. 1977). By participating in contract negotiations in Nevada, VPG purposefully availed itself of the privilege of carrying on activities in the State. *Id.* at 1287. NRS 14.065, the long-arm statute, is applicable to VPG both under its "transacting any business" and the "committing a tortious act" within the State provisions.

Where a non-resident defendant's contacts with the forum state are not continuous and systematic, due process concerns are evaluated on the bases of the nature and quality of the defendant's contacts in relation to the claims for relief. *Data Disc* at 1287. A three-pronged standard is used in making that evaluation: (1) The defendant must do some act by which he purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must arise out of or result from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable. *Ibid.*

Where the alleged injury is the result of intentional, rather than negligent,

conduct, the defendant has purposefully interjected itself into the state. *Taubler v. Giraud,* 655 F.2d 991, 995 (9th Cir.1981). There is no contention that VPG's complained-of conduct was negligent. All of plaintiff's claims arise out of VPG's activities in relation to the Douglas County condominium units. The reasonableness of the forum's exercise of jurisdiction is determined by deciding whether the defendant should reasonably have anticipated being haled into court there. *Id.* at 993; *Raffaele v. Compagnie Generale Maritime,* 707 F.2d 395, 397 (9th Cir.1983). Where a corporation purposefully avails itself of the privilege of conducting activities within the forum state, it has clear notice that it is subject to suit there. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). The impact of VPG's conduct with regard to the Douglas County condominium units was bound to be felt in Nevada. It is reasonable to expect a lawsuit arising from that conduct to be brought there. *See Jones Enterprises, Inc. v. Atlas Service Corporation,* 442 F.2d 1136, 1139–1140 (9th Cir. 1971); *Taubler* at 995; *Data Disc* at 1288. The exercise of personal jurisdiction over VPG is proper.

Defendant Hollis is charged in the complaint only with permitting, consenting to, and ratifying the allegedly wrongful conduct of VPG's agents and employees. He has been sued for his actions as president of VPG. All of his activities in Nevada, as described in the affidavit of plaintiff's corporate secretary, were conducted in his capacity as president of the defendant corporation.

■ There is no doubt that an individual who commits a tort while acting in the capacity of a corporate officer may be held personally liable. *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 902 (2nd Cir. 1981). However, a dichotomy has been recognized between the principles governing personal liability for torts committed by the officer and those governing his amenability to personal jurisdiction solely on the basis of those tortious acts. *Ibid.* Defendant

Hollis argues that the "fiduciary shield" doctrine insulates him from the exercise of personal jurisdiction by this Court. Most jurisdictions recognize the doctrine. 4 Wright & Miller, Fed.Prac. & Proc. § 1069 (1982 pocket part).

An excellent definition and explanation of the doctrine is found in the *Marine Midland Bank* opinion at page 902.

> ". . . if an individual has contact with a particular state only by virtue of his acts as a fiduciary of the corporation, he may be shielded from the exercise, by that state, of jurisdiction over him personally on the basis of that conduct. Thus, his conduct, although it may subject him to personal liability, may not form the predicate for the exercise of jurisdiction over him as an individual. The underpinning of this fiduciary shield doctrine is the notion that it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer."

The opinion goes on, at page 903, to indicate that the doctrine is an equitable principle to be applied only where appropriate. "In each instance, fairness is the ultimate test. Its applicability depends generally on the employee's faithful pursuit of the corporation's interests rather than his own interests." *See also Weller v. Cromwell Oil Company,* 504 F.2d 927, 931 (6th Cir.1974); *Idaho Potato Com'n v. Washington Potato Com'n,* 410 F.Supp. 171, 181 (D.Idaho 1976). "Absent a ruse to conceal an employee's personal activity behind the corporate shield, it is most difficult to conclude that the employee purposefully availed himself of a distant forum's laws." *Id.* at 183.

■ Both *Idaho Potato Com'n,* at 180, and *Cromwell Oil Company,* at 929, view it as settled that jurisdiction over an individual officer of a corporation may not be predicated merely upon jurisdiction over the corporation itself. The corporation is not an agent of the officer.

IT IS, THEREFORE, HEREBY ORDERED that defendant Daniel W. Hollis'

motion to dismiss the complaint against him be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendant Venture Planning Group, Inc.'s motion to dismiss be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that defendant Venture Planning Group, Inc.'s motion for a more definite statement be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that both defendants' motion to quash service of process be, and the same hereby is, DENIED.