[No. 35683.    *En Banc.*    August 31, 1961.]

LESTER ROBISON *et al., Respondents,* v. JOE DWYER, *as Director of the State Department of Agriculture, Appellant.*\*

\*Reported in 364 P. (2d) 521.

*The Attorney General, Richard M. Montecucco, Assistant,* and *John N. Rupp, Special Assistant,* for appellant.

*Paine, Lowe, Coffin, Herman & O'Kelly, Horton Herman,* and *Eldon H. Reiley,* for respondents.

*Elwood Hutcheson, Amicus Curiae.*

FOSTER, J.—Joe Dwyer, director of agriculture and the defendant in the superior court, appeals from a final judgment which held void the Washington agricultural enabling act[1] and vacated the administrative order promulgated thereunder creating a wheat commission. The findings and conclusions upon which the judgment is based are sweeping, indeed, for the trial court sustained every argument advanced against the constitutionality of the act. The resulting twenty-six assignments of error frustrate efforts at opinion brevity.

A petition to create a wheat commission was filed in August of 1958. Subsequently, the director prepared a list

---

[1]Laws of 1955, chapter 191, p. 768 (RCW 15.66.010, *et seq.*).

of wheat producers. A mailing list of 8,500 names was procured from the Washington Wheat Growers Association, to which the director added one hundred thirteen others. The superior court concluded that the list so compiled was hand-picked to include those favoring the promulgation of a marketing order for wheat and excluding those opposed.

Notices were sent to such selected producers and notice was published in newspapers in nineteen of the twenty affected counties. The 2,786 persons who responded constituted the director's roll of affected producers and were notified of a public hearing. This hearing resulted in findings and a recommended marketing order. A final decision approved the same. A referendum pursuant to the statutory formula ratified the marketing order. Thereafter, a wheat commission was established.

Respondents appealed to the director who upheld the marketing order. Appeal to the superior court resulted in a judgment holding the statute to be unconstitutional, from which judgment the director appeals.

■ Statutes are presumed to be constitutional. *Clark v. Dwyer*, 56 Wn. (2d) 425, 353 P. (2d) 941, certiorari denied, 364 U. S. 932, 5 L. Ed. (2d) 365, 81 S. Ct. 379; *Port of Tacoma v. Parosa*, 52 Wn. (2d) 181, 324 P. (2d) 438; *Gruen v. State Tax Comm.*, 35 Wn. (2d) 1, 211 P. (2d) 651.

The superior court held that the act violated Art. II, § 19, of the state constitution, which provides that "No bill shall embrace more than one subject, and that shall be expressed in the title."

The title is:

"AN ACT relating to agriculture and agricultural production; defining terms; providing for the issuance, amendment and termination of marketing orders and agreements; providing for the creation of commodity commissions and prescribing powers and duties thereof; prescribing hearing, appeal, election and other procedures; levying assessments; providing for enforcement; and establishing penalties."

■ This is an adequate caveat of the material contained in the act. *Rourke v. Department of Labor & Industries,*

41 Wn. (2d) 310, 249 P. (2d) 236, held a title need not be a comprehensive index, but need only give notice and indication of what is dealt with. No one would be misled by this title.

■ An act dealing with a general subject may contain numerous subdivisions without offending the constitution. Art. II, § 19, of the state constitution, was intended to prohibit logrolling and riders. *State ex rel. Graham v. Enking,* 59 Idaho 321, 82 P. (2d) 649.

The enactment is within the police power, notwithstanding the trial court's contrary conclusion. *Clark v. Dwyer, supra,* sustained a statute relating to the apple industry and rejected the argument now advanced by respondents.

In *C. V. Floyd Fruit Co. v. Florida Citrus Comm.,* 128 Fla. 565, 175 So. 248, 112 A. L. R. 562, the Florida supreme court stated:

" 'The protection of a large industry constituting one of the great sources of the State's wealth and therefore directly or indirectly affecting the welfare of so great a portion of the population of the State is affected to such an extent by public interest as to be within the police power of the sovereign.' "[2]

■ Respondents claim, however, that the act contains unreasonable classifications because producers of less than five hundred bushels of wheat annually are exempted. The proof that the cost of collection would exceed the resulting revenue is a sufficient reason for excluding small producers.

In *Carmichael v. Southern Coal & Coke Co.,* 301 U. S.

---

[2]See: *Louisiana State Dept. of Agriculture v. Sibille,* 207 La. 877, 22 So. (2d) 202; *Miller v. Michigan State Apple Comm.,* 296 Mich. 248, 296 N. W. 245; *State ex rel. Graham v. Enking,* 59 Idaho 321, 82 P. (2d) 649; *C. V. Floyd Fruit Co. v. Florida Citrus Comm.,* 128 Fla. 565, 175 So. 248; *Torigian v. Saunders,* 77 S. D. 610, 97 N. W. (2d) 586; *Flynn, Welch & Yates, Inc. v. State Tax Comm.,* 38 N. M. 131, 28 P. (2d) 889; *Northern Commercial Co. of Alaska v. Territory of Alaska,* 289 Fed. 786; *Thompson v. McLeod,* 112 Miss. 383, 73 So. 193; *State v. F. H. Vahlsing, Inc.,* 147 Me. 417, 88 A. (2d) 144. See, also, 1 Cooley, Taxation (4th ed.), 125, 127, § 42.

495, 81 L. Ed. 1245, 57 S. Ct. 868, 109 A. L. R. 1327, the United States supreme court stated:

"Administrative convenience and expense in the collection or measurement of the tax are alone a sufficient justification for the difference between the treatment of small incomes or small taxpayers and that meted out to others. *Citizens' Telephone Co. v. Fuller,* 229 U. S. 322, 332; *Hatch v. Reardon,* 204 U. S. 152, 159; *New York v. Lathrobe,* 279 U. S. 421, 428; *Aero Transit Co. v. Georgia Public Service Comm'n,* 295 U. S. 285, 289. Cf. *Florida Central & Peninsular R. Co., v. Reynolds,* 183 U. S. 471, 480; *Packer Corp. v. Utah,* 285 U. S. 105, 110, footnote 6. . . ."

■ The argument that, if producers of less than five hundred bushels are exempted, the first five hundred bushels of all producers must be exempted from assessment is rejected for the same reason. Were the first five hundred bushels of all producers exempted, the result would be the same in collecting from producers of from five hundred to one thousand bushels as it presently is from producers of five hundred or less bushels. Such a result is absurd. The legislature decided that those producers above the statutory line of demarcation are materially affected by the operation of the statute while those below are not.

The superior court held the act unconstitutional on the further grounds that the assessment authorized by the act and levied by the commission is not related to a special benefit, is a second tax upon personal property, is not uniform within a classification, is not for a public purpose, and is levied by private persons. We decide otherwise.

■ The assessment is an excise,[3] rather than a property, tax. It is not based upon the selling price, but is levied only upon the commercial producers of wheat and is measured solely by the quantity produced. It is imposed

---

[3]"Excise . . . 1755 JOHNSON *Excise,* a hateful tax levied upon commodities, and adjudged not by the common judges of property, but wretches hired by those to whom excise is paid. . . ." 3(2) The Oxford Dictionary 379.

for the privilege of carrying on a business activity. It is immaterial that the wheat is a product not ready for consumption when the tax is levied. *Northern Commercial Co. of Alaska v. Territory of Alaska,* 289 Fed. 786.[2]

■ Reasonableness of classification and uniformity within that classification were held lacking. This is error. First, such determinations are peculiarly for the legislature, great breadth being given it to make such determinations which will be overturned by courts only if the unreasonableness and lack of uniformity is clear beyond cavil. No court can say that the legislature has classified unreasonably. The wheat industry is an important one, and has unique problems.

The public purpose of the act has been discussed. It is within the police power and is calculated to enhance the public welfare. Implementing assessments are for the same purpose and are likewise immune from such attack.

■ The statute was held invalid because the funds so collected are not required to be deposited in the state treasury. The constitutional requirement (Art. VII, § 6, of the state constitution) of the deposit of all tax money in the state treasury applies only to state funds. The moneys in question are not state funds. *State ex rel. Sherman v. Pape,* 103 Wash. 319, 174 Pac. 468, so decided:

"In the exercise of its police power the state undoubtedly could have made all funds its own, to be dealt with as state funds contemplated by the constitution; but it was not necessary so to do. The legislative wisdom could in its discretion provide for the collection and administration of the funds without making them state or public funds. This the legislature by this act undoubtedly did, and it is not our business to question its wisdom. These funds were not taxes levied and collected for state purposes generally, but were assessments laid upon private lands particularly for the benefits done those private lands. It was not necessary, therefore, that the sums imposed and collected should come into the state treasury as provided by art. 7, § 6."

See, also, *Louisiana Dept. of Agriculture v. Sibille,* 207 La. 877, 22 So. (2d) 202.

■ The act immunizes wheat commissioners from anti-

trust liability. This is not, however, a violation of the privileges and immunity clause of the state or Federal constitution. The statutory immunization is merely a restatement of existing law that the antimonopoly provision of the state constitution does not apply to the state (or its agencies) in regulating and adjusting the agricultural market. *Uhden, Inc. v. Greenough,* 181 Wash. 412, 43 P. (2d) 983, 98 A. L. R. 1181. See *United States v. Rock Royal Co-operative, Inc.,* 307 U. S. 533, 560, 83 L. Ed. 1446, 59 S. Ct. 993.

■ The holding that the act violates Art. II, § 28, of the state constitution prohibiting special laws granting corporate powers is wrong for the same reason. *State ex rel. Tattersall v. Yelle,* 52 Wn. (2d) 856, 329 P. (2d) 841.

■ In holding that the act unlawfully delegated legislative power to the director of agriculture and to the wheat commission, the trial court relied heavily on *Peterson v. Hagan,* 56 Wn. (2d) 48, 351 P. (2d) 127. This decision is not germane because the statute there under consideration prescribed no standards at all for the promulgation of rules. Without guidelines and a declared legislative purpose, the administrative agency was left to its own unbridled discretion. This statute is the very antithesis. It contains a declared legislative purpose and prescribes guidelines controlling the promulgation of marketing orders. It is not necessary that standards be refined and detailed if a legislative mandate is expressed to which the administrative body must conform.

*Clark v. Dwyer, supra,* reiterated our conclusion in *Senior Citizens League v. Department of Social Security,* 38 Wn. (2d) 142, 228 P. (2d) 478, as follows:

" 'The constitutional prohibition against the delegation of legislative power does not preclude the delegation to administrative officers or boards of the power to determine some fact or state of things upon which the application of the law is made to depend, provided the law enunciates a standard by which such officers or boards must be guided. *State ex rel. Chicago, M. & St. P. R. Co. v. Public Service Commission,* 94 Wash. 274, 162 Pac. 523; *State v. Bayles,* 121 Wash. 215, 209 Pac. 20; *Royer v. Public Utility Dist. No. 1,* 186 Wash. 142, 56 P. (2d) 1302; *State ex rel. Wash-*

*ington Toll Bridge Authority v. Yelle,* 195 Wash. 636, 82 P. (2d) 120; *Morgan v. Department of Social Security,* 14 Wn. (2d) 156, 127 P. (2d) 686.

" 'The legislature may also, under proper circumstances, delegate to administrative officers and boards, authority to promulgate rules and regulations to carry out an express legislative purpose, or to effect the operation and enforcement of a law. *Vail v. Seaborg,* 120 Wash. 126, 207 Pac. 15; *State v. Nelson,* 146 Wash. 17, 261 Pac. 796; *In re Gifford,* 192 Wash. 562, 74 P. (2d) 475, 114 A. L. R. 348; *Home Owners' Loan Corp. v. Rawson,* 196 Wash. 548, 83 P. (2d) 765; *State v. Miles,* 5 Wn. (2d) 322, 105 P. (2d) 51.' "

The present act sets forth sufficient directions so that the administrators are governed by the declared legislative purpose rather than by their own caprice. There is no unconstitutional delegation.

This is also true of the assessment. It is not a tax levied by private persons, but is an assessment imposed by the legislature, the exact amount of which is determined administratively pursuant to the statutory formula.

Respondents contend that the provision for appellate administrative review by the director of the department of agriculture constitutes an unlawful delegation of judicial power. This device, however, does not preclude the superior court from reviewing the action of the director nor does it restrict the scope of such judicial review. The administrative appellate review is an added safeguard.

Finally, we reach the trial court's holding that, even if the statute were constitutional, the actions of the director were arbitrary, capricious and contrary to law. Some of the grounds relied upon have already been dealt with.

The court held that there was a failure to publish notice of the proposed action in each of the affected *counties,* and that such defect was fatal. However, the statute does not require publication of notice in a newspaper published in every county affected. (*Cf. Gottstein v. Lister,* 88 Wash. 462, 153 Pac. 595.) Publication is necessary only in the affected *area.* This requirement was met. Pend Oreille county alone was omitted. However, Spokane newspapers and others which carried the notice circulate generally in

that county. Certainly there was substantial compliance with the notice requirement.

There is no evidence to support the superior court's holding that the director's actions in utilizing a list of affected wheat producers were improper, and that the preliminary list of producers was "hand-picked" to select those inclined to favor the creation of the wheat commission. These are serious accusations and must be supported by strong proof. There is a reasonable basis supporting the director's use of the list employed.

The philosophy of statutes is peculiarly within the legislative domain and courts must not allow their views of policy to affect judicial decisions on constitutional issues. Unless a statute contravenes the constitution, the courts cannot interfere.

The judgment is reversed.

FINLEY, C. J., MALLERY, HILL, DONWORTH, WEAVER, ROSELLINI, and HUNTER, JJ., concur.

OTT, J., did not participate.