**IDAHO POTATO COMMISSION and the State of Idaho, Plaintiffs,**

v.

**WASHINGTON POTATO COMMISSION et al., Defendants.**

Civ. No. 1–75–48.

United States District Court, D. Idaho.

Oct. 21, 1975.

Opinion on Motion to Dismiss March 10, 1976.

Paul S. Street, Moffatt, Thomas, Barrett & Blanton, Boise, Idaho, Wayne L. Kidwell, Atty. Gen., Rudolf D. Barchas, Deputy Atty. Gen., Boise, Idaho, for plaintiffs.

Slade Gorton, Atty. Gen., E. E. "Bill" Rosatto, Sr., Asst. Atty. Gen., Olympia, Wash., Charles C. Flower, Wilson & Flower, Yakima, Wash., Jeremiah A. Quane, John P. Howard, Quane, Smith, Howard & Hamlin, Boise, Idaho, Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, for defendants.

## MEMORANDUM DECISION AND ORDER

J. BLAINE ANDERSON, District Judge.

Plaintiffs, Idaho Potato Commission (I.P.C.) and the State of Idaho, have brought suit under the diversity statute, 28 U.S.C.A. § 1332, and under the Trademark Act, 15 U.S.C.A. § 1121, against defendants for infringement of the trademark "Idaho" and for unfair competition. The Washington Potato Commission (W.P.C.) and Pacific National Advertising, Inc. have moved to dismiss the complaint predicated upon 28 U.S.C.A. § 1332 and to change venue to the District of Washington for a determination of claims based on the Trademark Act. The matter has been fully briefed and the Court, being fully advised in the premises, hereinafter renders its Memorandum Decision and Order.

■ Defendants contend that this Court does not have diversity jurisdiction for the reason that the State of Idaho is not a citizen.[1] It is well-settled that a state is not a citizen for diversity purposes. *Postal Telegraph Cable Co. v.*

---

1. It does not appear from the briefs that the defendants are asserting that this court lacks personal jurisdiction.

*State of Alabama,* 155 U.S. 482, 15 S.Ct. 192, 39 L.Ed. 231 (1894). However, the real party in interest, rather than the names of the parties, controls the question of whether there is diversity jurisdiction. Rule 17(a) F.R.C.P. If the State of Idaho participates in this lawsuit as a nominal party only, then jurisdiction exists.

The real party in interest issue initially requires a determination of what party possesses the right sought to be enforced. *Wright & Miller,* Federal Practice and Procedure: Civil § 1542, p. 639 (1971). Here, the trademark registrant is the State of Idaho and as such is granted the right to sue for infringement. 15 U.S.C.A. § 1114. The term "registrant," however, is defined as including legal representatives, successors and assigns of a registrant. 15 U.S.C.A. § 1127. In its broadest sense, "legal representative" means one who stands in the place of and represents the interests of another. *Black's Law Dictionary,* Revised 4th Ed. (1966). By virtue of Idaho Code § 22–1201 et seq., the I.P.C. stands in the place of and represents the interests of the State of Idaho in guarding against infringement of the trademark "Idaho". Idaho Code § 22–1207 grants the I.P.C. the following powers:

" . . .

8. To define and designate the character of the brands, labels, stencils, or other distinctive marks under which said potatoes may be marketed in order to secure the greatest returns to producers and meet the requirements of their advertising campaign.

9. To devise and arrange for the application of either a seal, label, brand, package, or any other suitable device that will protect the identity of the original Idaho pack of potatoes as near to the final consumer as .possible.

10. Whenever and wherever it deems it to be necessary the commission shall use its offices to prevent any substitution of other potatoes

for Idaho potatoes and to prevent the misrepresentation or the misbranding of Idaho potatoes at any and all times at any and all points where they discover the same is being done."

Idaho Code § 22–1207 contemplates that the I.P.C. will administer the application of the mark "Idaho" to Idaho potatoes. Supervision and control over the use and protection of the mark has been delegated to the I.P.C.

The foregoing analysis is further supported by Rule 17(a) F.R.C.P., for the rule contemplates that a party entitled to sue by a statute is a real party in interest. A party authorized by statute may sue in its own name without joining the party for whose benefit the action is brought. Rule 17(a) F.R.C.P. As stated in *Wright & Miller, supra* § 1543, p. 644:

"[The] modern function of the rule in its negative aspect is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to ensure generally that the judgment will have its proper effect as res judicata."

The I.P.C. could sue without joining the State, yet joinder here provides defendants with protection from a subsequent suit arising from the same set of facts. Since defendants are afforded res judicata protection, there is no conflict with the purpose underlying the real party in interest rule. In summary, it can be seen that the I.P.C. possesses the substantive right sought to be enforced, and is, therefore, under Rule 17(a), the real party in interest.

The Court's analysis does not stop here, however, for defendants claim that the I.P.C. is a mere arm or alter ego of the State and, therefore, for purposes of this action, the State is the real party in interest. In analyzing the relationship between an agency and its sovereign, courts have looked to: the agency's ability or lack thereof to sue and be sued, performance by the entity of an essential government function, the agency's power to take property in its own

name or in the name of the state, corporate status or lack thereof of the agency, and the financial interest or lack thereof by the State. See Annot., 6 A.L.R.Fed. 615 (1971). Two factors are of primary importance, namely, performance of a governmental function and the financial connection or independence between the agency and the sovereign. *Broadwater-Missouri Water Users' Ass'n. v. Montana Power Co.*, 139 F.2d 998 (9th Cir. 1944); *DeLong Corporation v. Oregon State Highway Commission*, 233 F.Supp. 7 (D.Ore.1964), affirmed 343 F.2d 911 (9th Cir. 1965); cert. denied 382 U.S. 877, 86 S.Ct. 161, 15 L.Ed.2d 119; *Fowler v. California Toll-Bridge Authority*, 128 F.2d 549 (9th Cir. 1942). The pertinent statutes reveal that the I.P.C. is an independent self-governing state agency which is financed through its own taxing power pursuant to Idaho Code § 22–1211. All costs and expenses incurred by the commission in performing its duties are to be paid out of the commission's fund and there can be no liability of the state beyond the amount of such fund. Idaho Code § 22–1210. Idaho Code § 22–1201 declares the policy of the Act as that of promoting Idaho's potato industry by expanding markets, thereby promoting the general welfare of the people. While the goal of the I.P.C. is to better the welfare of Idaho residents, its function is to carry out advertising and promotion which traditionally is not a governmental function. Commercial advertising is distinguishable from conservation of water resources as in *Broadwater-Missouri Water Users' Ass'n. v. Montana Power Co., supra*, and the construction of roads and bridges as in *DeLong Corporation v. Oregon State Highway Commission, supra*, and *Fowler v. California Toll-Bridge Authority, supra*. The fact that statutes do not expressly confer the power to sue and be sued upon the I.P.C. or declare that it is a body corporate is not dispositive, rather the controlling criteria establishes that the I.P.C. is financially independent and does not perform an essential governmental function. Therefore, it is the conclusion of the Court that the State of Idaho is a nominal party and the I.P.C. is the real party in interest. Accordingly, the Court holds that it has diversity of citizenship jurisdiction.

Defendant W.P.C. contends that even if this Court determines that it has diversity of citizenship jurisdiction, it should transfer the action to the District of Washington pursuant to 28 U.S.C.A. 1404(a), which provides as follows:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Additionally, while defendants concede the Court has subject matter jurisdiction under the Trademark Act, they assert that venue is proper in the District of Washington. Reliance is placed on 28 U.S.C.A. 1391(b), which provides as follows:

"A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law."

Since this Court has jurisdiction under both the diversity of citizenship statute and the Trademark Act, the Court must decide if the claim arises here. Balancing the contacts involved in a given action is a reasonable manner of determining "where the claim arose" for venue purposes. *Arnold v. Smith Motor Co., Brookfield, Mo.*, 389 F.Supp. 1020, 1023–1024 (N.D.Iowa 1974); *Honda Associates, Inc. v. Nozawa Trading Co.*, 374 F.Supp. 886 (S.D.N.Y.1974). Defendants argue that all defendants reside in Washington, witnesses are located there, the relevant acts giving rise to a cause of action took place in Washington and that suit in Idaho would cause defendants a severe burden. On the other hand, plaintiffs assert that they reside in Idaho, witnesses regarding defendants' claim of abandonment of the trademark are located here, and that the damage caused by infringement and unfair competition occurred in Idaho. The case of *Honda Associates, Inc. v. Nozawa Trading, Inc.*,

*supra*, while instructive, offers very little guidance for the reason that the weight of contacts overwhelmingly lay in California. On the facts before this Court, an equal balance of contacts exists between the two states. Were plaintiffs forced to sue in Washington, they would be inconvenienced and the same holds true for defendants if they defend in Idaho.

" 'In cases of trade-mark infringement the wrong takes place not where the deceptive labels are affixed to the goods or where the goods are wrapped in the misleading packages, but where the passing off occurs. *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 639 (2nd Cir. 1956), *cert. denied*, 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76, *reh. denied*, 352 U.S. 913, 77 S.Ct. 144, 1 L.Ed.2d 120 (1956)' "; *Honda Associates, Inc., v. Nozawa Trading, Inc., supra*, p. 888.

Plaintiffs have chosen this forum to litigate their claims for the reason that this is the place of the wrong and it seems just and equitable to respect that choice where on balance the weight of contacts does not lie in either state and where the inconvenience to the parties is equally disadvantageous if one forum is selected over another. Accordingly, the Court holds that venue is proper in this Court.

■ The defendant W.P.C. contends that plaintiffs' suit is barred by the Eleventh Amendment. In the recent Supreme Court case of *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), *reh. denied*, 416 U.S. 1000, 94 S.Ct. 2414, 40 L.Ed.2d 777, the Court addressed the question of whether a state agency comes within the prohibition of the Eleventh Amendment.

". . . [W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.

"Thus the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Id.* at 663, 94 S.Ct. at 1356, 39 L.Ed.2d at 673.

Likewise, the Ninth Circuit Court of Appeals recently stated:

"The most important factor in determining whether a particular agency is the 'alter ego' of the State for Eleventh Amendment purposes is 'whether payment of a judgment will have to be made out of the state treasury, i. e., whether the fund in question has both the independent power and resources to pay the judgment without further action by the state legislature or other government officer.' " *Hutchison v. Lake Oswego School District No. 7*, 519 F.2d 961 (9th Cir. 1975).

The Washington Potato Commission's funds are not derived from legislative appropriation, rather its revenue is derived from an annual assessment upon units of agricultural commodities. R.C.W.A. 15.66.150. All monies collected are to be used solely by the Commission and shall not be used by any other commission or department of government. R.C.W.A. 15.66.180. Moreover, all obligations and liabilities incurred by the Commission shall be enforced only against the assets of the Commission and there can be no liability for debts or actions of the Commission against the State or any subdivision or instrumentality thereof. R.C.W.A. 15.66.230. *Cf. Robison v. Dwyer*, 58 Wash.2d 576, 364 P.2d 521, 525 (1961). Under the standard of *Edelman, supra*, the Eleventh Amendment is no shield to the W.P.C. *Cf. Missouri, K. & T.R. Co. v. Missouri Railroad & Warehouse Comrs.*, 183 U.S. 53, 22 S.Ct. 18, 46 L.Ed. 78 (1901).

The Ninth Circuit in *Hutchison* viewed four other factors with regard to an agency's immunity under the Eleventh Amendment, namely: performance by the entity of an essential governmental function, ability to sue and be sued, power to take property in its own name and corporate status. As previously stated, the I.P.C. does not perform an essential

governmental function and that holding is applicable to the W.P.C. for the function and purpose of the agencies in the respective states are the same. The W.P.C. may institute and maintain all legal actions in its own name, R.C.W.A. 15.66.140(6) and take property in its own name. R.C.W.A. 15.66.140(5). Although the W.P.C. has not been granted "corporate status" by statute, that factor alone is not determinative, for when viewing the totality of characteristics indicating the independency of the W.P.C., it is a distinct legal entity designed to enable "producers of agricultural commodities to help themselves" in all aspects of production and marketing. R.C.W.A. 15.66.-020. Annot., 6 A.L.R.Fed. 615, 632 (1971). The W.P.C. is therefore not immune from suit under the Eleventh Amendment.

Defendant relies on *Robison v. Dwyer, supra,* for the proposition that the W.P.C., like the Washington Wheat Commission, is a state agency. Even reading *Robison* for the proposition that the W.P.C. can be labeled a state agency, the label attached is of little significance in light of standards of *Edelman* and *Hutchison.* Defendant further contends that the State of Washington has consented to suit only in the Courts of Washington. This suit, however, is not against the State of Washington, and as has been previously stated, the State cannot be held liable for debts or liabilities of the W.P.C.

In light of the foregoing,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that defendants Washington Potato Commission and Pacific National Advertising Agency, Inc.'s motions to dismiss the complaint and/or for a change of venue are DENIED.

### ON MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION.

Presently pending before the Court are motions to dismiss filed by David W. Evans, Inc. and members of the Washington Potato Commission. The Court, being fully advised in the premises, hereinafter renders its Memorandum Decision and Order.

### I.

### DEFENDANT DAVID W. EVANS, INC.'S MOTION TO DISMISS

Plaintiff's original complaint named as a defendant, among others, Pacific National Advertising Agency, Inc. On November 10, 1975, plaintiffs filed an amended complaint which named, in addition to defendant Pacific National Advertising Agency, Inc., among others, defendants David W. Evans, Inc. and Evans/Pacific, Inc. Plaintiffs recite in the Amended Complaint that Pacific National Advertising Agency, Inc. merged with David W. Evans, Inc., resulting in Evans/Pacific, Inc., a wholly-owned subsidiary of David W. Evans, Inc.

On January 15, 1976, defendant David W. Evans, Inc. filed a motion to dismiss and quash service. The motion, supported by affidavit, raises the issue of whether this Court has personal jurisdiction. Plaintiffs assert that personal jurisdiction exists under the Idaho long-arm statute, Idaho Code 5–514(a), (b) which states as follows:

"*Acts subjecting persons to jurisdiction of courts of state.*—Any person, firm, company, association or corporation, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits said person, firm, company, association or corporation, and if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

(a) The transaction of any business within this state which is hereby defined as the doing of any act for the purpose of realizing pecuniary benefit or accomplishing or attempting to accomplish, transact or enhance the business purpose or objective or any part

thereof of such person, firm, company, association or corporation;

(b) The commission of a tortious act within this state;

. . . ."

Plaintiffs assert that since this Court has personal jurisdiction over defendants Washington Potato Commission and Evans/Pacific, Inc., formerly Pacific National Advertising Agency, Inc., it clearly must have jurisdiction over defendant David W. Evans, Inc. Plaintiffs' argument is based on the allegations of the amended complaint and supported by exhibits that infringing advertisements have continued after the purchase of Pacific National Advertising Agency, Inc. by David W. Evans, Inc. This Court is of the view, however, that personal jurisdiction does not exist with regard to David W. Evans, Inc.

Defendant has filed an affidavit by George Robert Ruff, President of David W. Evans, Inc. Mr. Ruff's affidavit states the following facts:

1. David W. Evans, Inc., a Utah corporation, owns all of the outstanding stock of Evans/Pacific, Inc., a Washington corporation, as a result of a transaction made on or about April 11, 1975. Previous to that time, Evans/Pacific, Inc. was known as Pacific National Advertising Agency, Inc., a Washington corporation.

2. The advertising campaign of the Washington Potato Commission, which is the subject of this lawsuit, was begun many months prior to the acquisition of Pacific National Advertising Agency, Inc., by David W. Evans, Inc.

3. The Washington management remained intact after the said acquisition and said company was then and is now operated independently from the operations of David W. Evans, Inc., a Utah corporation. The directors, management and employees of David W. Evans, Inc. played no role in any aspect of the advertising campaign for the Washington Potato Commission. David W. Evans, Inc. and its officers, directors and employees played no part in providing services with respect to the advertising campaign of the Washington Potato Commission.

4. David W. Evans, Inc. is not a party to any contract with the Washington Potato Commission or its members or the State of Washington. David W. Evans, Inc. has not written nor placed nor disseminated any advertising material for the said Washington Potato Commission, its members, or the State of Washington.

5. David W. Evans, Inc. does not now have, and at no time material to these proceedings, had any officer, employees or property of any kind located in the State of Idaho. David W. Evans, Inc. does not hold itself out as doing business in the State of Idaho, and has not heretofore at any time material to these proceedings held itself out as doing business in the State of Idaho. It has not qualified to do business in the State of Idaho.

6. David W. Evans, Inc. has no active customers with principal offices in the State of Idaho.

■ Plaintiff responds to Ruff's affidavit by concluding that it is self-serving; however, that does not relieve the plaintiff of his burden to establish personal jurisdiction and to come forth with counter-affidavits or point to facts garnered from discovery which counteract the statements of the affiant. Such principles facilitate the proper disposition of matters before this Court, principles which plaintiff has failed to adhere to. *Taylor v. Portland Paramount Corporation,* 383 F.2d 634 (9th Cir. 1967).

■ In order for this Court to exercise jurisdiction over a party, there must be certain minimum contacts with the State of Idaho. *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *McGee v. International Life Insurance Company,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *International Shoe Company v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Doggett v. Electronics Corp. of America,* 93 Idaho 26, 454 P.2d 63 (1969); *See, Akichika v. Kellerher,* 96 Idaho 930, 539 P.2d 283 (1975). To determine whether personal

jurisdiction exists in a given case, the Ninth Circuit has adopted the following test:

"(1) The nonresident defendant must do some act or consummate some transaction within the forum. It is not necessary that defendant's agent be physically within the forum, for this act or transaction may be by mail only. A single event will suffice if its effects within the state are substantial enough to qualify under Rule Three.

" '(2) The cause of action must be one which arises out of, or results from, the activities of the defendant within the forum. It is conceivable that the actual cause of action might come to fruition in another state, but because of the activities of defendant in the forum state there would still be a "substantial minimum contact."

" '(3) Having established by Rules One and Two a minimum contact between the defendant and the state, the assumption of jurisdiction based upon such contact must be consonant with the due process tenets of "fair play" and "substantial justice." If this test is fulfilled, there exists a "substantial minimum contact" between the forum and the defendant. The reasonableness of subjecting the defendant to jurisdiction under this rule is frequently tested by standards and analogous to those of forum non conveniens.' 47 Georgetown L.J. 342, 351–52 (1958)." *L. D. Reeder Contractors of Arizona v. Higgins Industries, Inc.*, 265 F.2d 768, 773–774, n. 12 (9th Cir. 1959); *Aanestad v. Beech Aircraft Corporation*, 521 F.2d 1298, 1300 (9th Cir. 1974).

Plaintiff fails the test. There is no evidence that David W. Evans, Inc. is connected with the acts which are the subject of this lawsuit. David W. Evans, Inc. has not performed an act within the state or consummated some transaction having an effect in Idaho. Failing the first element of the *Reeder* test, it is impossible for this Court to conclude that the cause of action arose out of, or results from, the activities of defendant David W. Evans, Inc. within the forum.

A failure to establish at least one minimum contact results in the inevitable conclusion that to uphold jurisdiction would not comport with fair play and substantial justice.

██ Plaintiff relies on David W. Evans, Inc.'s ownership of stock in Evans/Pacific, Inc. as supplying the nexus with the latter's activities in this state.

"When a subsidiary of a foreign corporation is carrying on business in a particular jurisdiction, the parent is not automatically subject to jurisdiction in the state. Thus, if the subsidiary's presence in the state is primarily for the purpose of carrying on its own business and the subsidiary has preserved some semblance of independence from the parent, jurisdiction over the parent may not be acquired on the basis of the local activities of the subsidiary." *Wright & Miller, Federal Practice and Procedure,* Civil § 1069, pp. 255–256 (1969).

Generally, a corporation and its stockholders are deemed separate and distinct, and stock ownership in itself is not sufficient to charge the parent company with responsibility for acts of the subsidiary. *Cannon Manufacturing Company v. Cudahy Packing Company,* 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925); *Farkas v. Texas Instruments, Inc.,* 429 F.2d 849 (1st Cir. 1970), *cert. denied,* 401 U.S. 974, 91 S.Ct. 1193, 28 L.Ed.2d 324 (1971); *Spears v. Transcontinental Bus System, Inc.,* 226 F.2d 94 (9th Cir. 1955), *cert. denied,* 350 U.S. 950, 76 S.Ct. 326, 100 L.Ed. 828 (1956); *Jackson v. Continental Trailways, Inc.,* 65 F.R.D. 451 (D.Nev. 1974); *Frito-Lay, Inc. v. Proctor & Gamble Company,* 364 F.Supp. 243 (N.D.Texas 1973); *Hayashi v. Sunshine Garden Products, Inc.,* 285 F.Supp. 632 (W.D. Wash.N.D.1967) *affirmed,* 396 F.2d 13 (9th Cir. 1968); *Wirtz v. Mercantile Stores Company,* 271 F.Supp. 830 (E.D. Okla.1967); *Eastern Industries v. Traffic Controls, Inc.,* 142 F.Supp. 381 (D.Del. 1956).

██ There is no evidence before this Court that David W. Evans, Inc. controlled the advertising campaign which is

the subject of this lawsuit. Similarly, there is no evidence which would call for the piercing of the corporate veil, other than the fact that David W. Evans, Inc. was the sole stockholder of Evans/Pacific, Inc. Mere stock ownership is insufficient to disregard the separate personality between parent and subsidiary and find personal jurisdiction over the parent. Since it is clear that David W. Evans, Inc. was not a resident of Idaho, was not present and did not commit an act in this state from which plaintiffs' cause of action arose, the Court finds that it lacks personal jurisdiction over David W. Evans, Inc.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that defendant David W. Evans, Inc.'s motion to dismiss be GRANTED, and, further, that plaintiffs' action be DISMISSED WITHOUT PREJUDICE as to David W. Evans, Inc.

## II.

### DEFENDANT MEMBERS OF THE WASHINGTON POTATO COMMISSION'S MOTION TO DISMISS

On October 21, 1975, this Court entered its Memorandum Decision and Order which decided, among other issues, that venue was proper in this forum. Normally, matters of venue are more appropriately addressed after the issue of personal jurisdiction has been decided; however, as this Court pointed out in footnote 1 of its Memorandum of October 21, 1975, it did not appear from defendants' briefs that they were raising the issue of lack of personal jurisdiction. At the hearing on defendants' motion to

reconsider this Court expressed doubts as to whether personal jurisdiction existed over the individual members of the Washington Potato Commission. The parties have addressed this issue in briefs and the matter is submitted.[1]

Proper analysis of this issue must begin with basic precepts summarized by the Idaho Supreme Court in *Akichika v. Kellerher,* 96 Idaho 930, at 932–933; 539 P.2d 283, 285 (1975):

"Considering the complexities of modern commercial transactions, questions of this nature do not lend themselves to a mechanical analysis; rather each case must be considered in light of its particular jurisdictional facts.

" . . . I.C. § 5–514 must be liberally construed. The statute was designed to provide a forum for Idaho residents; 'as such, the law is remedial legislation of the most fundamental nature' . . . By enacting the statute the legislature intended to exercise all the jurisdiction available to the State of Idaho under the due process clause of the United States Constitution." (citations omitted)

 Individual members of the Washington Potato Commission hold a position with the Commission which is closely analogous to the relationship of officers and directors to a corporation. Therefore, this Court addresses the issue of personal jurisdiction over the members in the same light as it would address the issue of personal jurisdiction over officers and directors in a corporation. It is settled that jurisdiction over individual officers and employees of a corporation may not be predicated merely upon jurisdiction over the corporation

---

1. The issue raised by defendant members of the Washington Potato Commission is closely analogous to the issue covered in Part I of this Memorandum.

 "A problem analogous to that raised by the question of when service on a subsidiary constitutes service on the parent corporation is presented when plaintiff is seeking to acquire jurisdiction over the principals of a corporation on an individual basis, and the individuals contend that all of their acts within the jurisdiction were carried out sole-

 ly in a corporate capacity." *Wright & Miller, Federal Practice and Procedure,* Civil § 1069, Supp. p. 28 (1976)

 In Part I of this Memorandum the Court explored the existence of a nexus between the State of Idaho and David W. Evans, Inc. and found that such a nexus was lacking. Here, there is a nexus between the individual members of the Washington Potato Commission, but the issue is whether the nexus is sufficient for this Court to exercise personal jurisdiction.

itself. *Weller v. Cromwell Oil Company,* 504 F.2d 927 (6th Cir. 1974); *Wilshire Oil Company of Texas v. Riffe,* 409 F.2d 1277, 1281, footnote 8 (10th Cir. 1969); *Lehigh Valley Industries, Inc. v. Birenbaum,* 389 F.Supp. 798 (S.D.N.Y.1975); *Path v. Instruments International Corp. v. Asahi Optical Co.,* 312 F.Supp. 805 (S.D.N.Y.1970); *Willner v. Thompson,* 285 F.Supp. 394 (E.D.N.Y.1968).

" . . . jurisdiction over individual officers and employees of a corporation may not be predicated on the court's jurisdiction over the corporation itself, unless the individuals are engaged in activities within the jurisdiction that would subject them to the coverage of the state's long-arm statute." *Wright & Miller, Federal Practice and Procedure,* Civil § 1069, Supp. p. 28 (1976)

In *Willner v. Thompson, supra,* plaintiff sued in New York a California corporation and its president. The action was for breach of contract and jurisdiction was alleged under the "doing business" clause of New York's long-arm statute. In granting the president's motion to dismiss, the court reasoned:

"Plaintiffs admit that this defendant conducted no business in New York in his *own right* and they made no showing that the activities of the corporation may be attributed to him as the corporation's alter ego. Plaintiffs do not allege that the corporate entity is a mere facade or sham to protect the individual defendant. Since the corporate defendant is not an agent of the individual defendant, its acts cannot possibly be attributed to him. It follows that the individual defendant did not transact any business in New York and could not be validly served in California . . . " (emphasis supplied) 285 F.Supp. at 397.

The court in *Path Instruments International Corp. v. Asahi Optical Co., supra,* followed the reasoning in *Willner v. Thompson, supra,* and adhered to the distinction between corporate business conducted by an officer and business conducted by an officer of a corporation in his own behalf. *See also: Schenin v. Micro Copper Corp.,* 272 F.Supp. 523 (S.D.N.Y.1967); *Unicon Management Corp. v. Koppers Company,* 250 F.Supp. 850 (S.D.N.Y.1966). The same substantive distinction applies in cases where tortious activity is alleged to confer personal jurisdiction under a state's long-arm statute, such that unless there is evidence that the act by the corporate officer was other than as an agent for the corporation, then personal jurisdiction over the corporate officer will not lie. *Fashion Two Twenty, Inc. v. Steinberg,* 339 F.Supp. 836, 842 (E.D.N.Y. 1971).

Of the cases previously referred to, the most analogous is *Weller v. Cromwell Oil Company, supra,* wherein plaintiff instituted an action in Ohio against a California corporation and two of its officers for breach of two distributorship contracts. Plaintiff alleged fraud and misrepresentation by the officers in connection with negotiations regarding the contracts. Jurisdiction was predicated under the Lanham Act, among other grounds. The Sixth Circuit Court of Appeals ruled that the Ohio long-arm statute would not extend to reach corporate officers and the court further stated:

"But even if the statute were construed to permit suit in Ohio we would still be faced with grave questions as to its constitutionality. We have serious doubt whether the activities of the corporate officers in behalf of the corporations set forth in Weller's affidavit are sufficient so as to make it reasonable and just, consistent with traditional notions of fair play, and in conformity with due process requirements of the Fourteenth Amendment that the individuals be subjected to suit in Ohio to enforce personal liability arising out of such activities. (citations omitted)

"If such suits against officers of national corporations were ever permitted, the individuals could be sued in every state of the union whenever they make telephone calls or write letters to a customer who claims that

they constitute misrepresentations." 504 F.2d at 931.

It is alleged in the complaint that members of the Washington Potato Commission approved an advertising plan which was disseminated in this forum and infringed the Idaho Potato Commission's trademark. Conceptually, it is difficult to distinguish the facts in this case from the following hypothetical factual situation. If Corporation A from State X sends Employee B into State Y to deliver certain products, and B crashes his delivery truck, injuring Resident C in State Y, then jurisdiction over both A and B exists in State Y. The result flows from the commission of a tortious act within the purview of State Y's long-arm statute. Comparing the facts of this case with the hypothetical factual situation, both the members and Employee B can be said to have committed acts from which a cause of action has arisen. Whether personal jurisdiction would lie, however, must be measured by inquiring whether the exercise of such jurisdiction comports with "fair play" and "substantial justice". A distinguishing feature between the hypothetical and the case at hand rests with the fact that here the members of the Washington Potato Commission were never physically present in Idaho; rather their activities occurred in Washington and had an alleged effect in Idaho.[2]

While in both cases a nexus with the distant forum exists, in the matter at hand the connection is more tenuous. It is proper to hold that a corporation which engages in activity having ramifications beyond the state in which it is physically present may have sufficient connection with a distant forum where the ramifications are felt. Yet, it is quite another matter to hold that an individual working for that same corporation, who has never been present in the distant forum with regard to a corporate transaction, has a similar connection with the distant forum. The same rationale applies equally to the members of the Washington Potato Commission.

A second distinguishing aspect lies in the expectancy interest of the members as contrasted with the hypothetical employee. It is doubtful that the individual members of the Commission could reasonably have anticipated that their activity in Washington could subject them to personal liability in a distant state such as Idaho.[3] Rather, it is uncontradicted that they viewed their role as directors of the Commission and that any liability which flowed from performance of that function would be deemed activity of the Commission. R.C.W.A. 15.66.230.[4] The situation here is much like activity by a corporate employee who, by performing corporate business, causes the corporation to purposefully avail itself of the

2. Physical presence in the forum is not normally considered a prerequisite to an exercise of in personam jurisdiction over a nonresident; nevertheless, it is a factor to be weighed in considering the reasonableness of exercising jurisdiction.

3. A different conclusion may result if the members' acts were dishonest, criminal or where such acts in the name of the Commission constituted a subterfuge for conducting personal activities.

4. R.C.W.A. 15.66.230:

"*Liability of commission, state, etc.* Obligations incurred by any commission and any other liabilities or claims against the commission shall be enforced only against the assets of such commission in the same manner as if it were a corporation and no liability for the debts or actions of the commission shall exist against either the state of Wash-

ington or any subdivision or instrumentality thereof or against any other commission established pursuant to this chapter or the assets thereof or against any member officer, employee or agent of the board in his individual capacity. The members of any such commission, including employees of such board, shall not be held responsible individually in any way whatsoever to any person for errors in judgment, mistakes, or other acts, either of commission or omission, as principal, agent, person or employee, except for their own individual acts of dishonesty or crime. No such person or employee shall be held responsible individually for any act or omission of any other member of any such commission. The liability of the members of such commission shall be several and not joint and no member shall be liable for the default of any other member."

laws of another state. Absent a ruse to conceal an employee's personal activity behind the corporate shield,[5] it is most difficult to conclude that the employee purposefully availed himself of a distant forum's laws.[6] Additionally, this Court finds that Idaho plaintiffs' and the State of Idaho's interest in extending its jurisdiction to the fullest extent consistent with due process, is not seriously harmed where there is jurisdiction over the corporation which committed acts within the state, or, as in the case at hand, jurisdiction over the Commission.

In light of the foregoing cases, this Court is satisfied that the exercise of jurisdiction over the individual members is improper under Idaho Code 5–514. Furthermore, on the facts of this case, the exercise of jurisdiction over the individual members of the Washington Potato Commission would be against "fair play" and "substantial justice" and is therefore unconstitutional.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that defendant individual members' motion to dismiss is GRANTED, and, further, that plaintiffs' action against them is DISMISSED WITHOUT PREJUDICE, and further,

The Court having been advised that this matter is ready for pre-trial proceedings,

IT IS HEREBY ORDERED that any remaining answers be filed by March 25, 1976; that the parties make a good faith effort to comply with Local Rule 10 of this Court, and draft an agreed upon pre-trial order not later than April 16, 1976. A trial date will be set after submission of an agreed upon pre-trial order.

---

5. ". . . if the corporation is not a viable one and the individuals are in fact conducting personal activities and using the corporate form as a shield, a court may feel compelled to pierce the corporate veil and permit assertion of personal jurisdiction over the individuals." *Wright & Miller, Federal Practice and Procedure, supra,* at p. 28.

6. ". . . it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 at 1298.