FORET, Judge.
The plaintiff, Joe E. Fryar, brought suit against Westside Habilitation Center (Westside) claiming that Westside had breached certain obligations owed Fryar under a construction contract for the development of a project known as Westside Habilitation Center. Westside, in turn, filed third party demands against various parties involved, including the defendant-relator, Bert Davis III. Davis, a resident of and domiciled in the State of Oklahoma, who was served pursuant to LSA-R.S. 13:3201 et seq., Louisiana’s long-arm statute, filed a declinatory exception of lack of personal jurisdiction, which was sustained by the trial court. The trial court ordered the third-party-plaintiff to amend its petition to reflect adequate jurisdictional facts based on the depositions of Davis. West-side amended its petition; Davis again excepted to the court’s lack of personal jurisdiction, but was overruled by the trial court. Davis then filed an application for supervisory writs to this Court. The writ was granted, and this Court reversed the trial court’s decision granting personal jurisdiction. Westside applied for a writ to the Louisiana Supreme Court, which was granted. The Supreme Court ordered the judgment of this Court vacated, ordering that arguments and briefing be had and an opinion issued. 457 So.2d 1186. We reinstate our original judgment denying personal jurisdiction to the trial court over Davis.
Westside is a not-for-profit corporation organized under the laws of the State of Louisiana. Westside was incorporated by Louisiana citizens on behalf of the Town of Cheneyville in order to provide for the building of a facility for the care and treatment of retarded and emotionally disturbed children. Westside was authorized by its articles of incorporation to issue bonds in order to construct and operate the proposed facility. The bonds issued were to be in the face amount of $13,500,000, pursuant to an indenture of trust agreement executed between Westside and Bossier Bank and Trust Company. The contract of indenture was executed on April 1, 1982, with Bossier agreeing to act as trustee of the trust created by the indenture.
Bossier was authorized by the indenture to invest the proceeds from the sale of the bonds in a “qualified investment”. Joseph Hancock, a bond broker in Little Rock, Arkansas, who underwrote the bonds, was designated as Bossier’s agent with respect to the search for and placement of the funds in some “qualified investment”. Hancock contacted Bill Goldsmith, a broker with P.A.M. in California, inquiring about investments and secured certificates of deposit. Goldsmith then contacted Davis at his office at Penn Square Bank in Oklahoma City, Oklahoma, about the possibility of Penn Square selling the C.D.’s. Goldsmith put Davis in touch with Hancock in Arkansas. At that time, Davis was vice-president in charge of the money center at Penn Square. On or about April 8, 1982, Bossier entered into an investment agreement with Penn Square whereby Bossier agreed to invest $8,682,000 of the funds in certificates of deposit with Penn Square. The agreement was drafted by Hancock and certain other parties in Arkansas and *198 sent to Davis in Oklahoma for his signature. The agreement provided that the deposit would be divided into two parts, one C.D. in the amount of $1,785,000 to be secured by obligations guaranteed by the United States Government or certain agencies thereof, and another C.D. in the amount of $6,897,000 to be secured by single-family mortgages “equal to or at least” 110% of the amount of the C.D. This latter amount represented the funds to be paid for the construction of the facility which Penn Square was to remit to Bossier on a monthly basis.
The collateral which was to be pledged by Penn Square to secure these deposits was to be delivered to Fidelity Bank of Oklahoma City pursuant to a custody agreement between Penn Square, Bossier, and Fidelity. Fidelity was to issue an appropriate receipt to Bossier describing the collateral under the terms of the agreement.
On April 20, 1982, the bonds were issued in Little Rock, Arkansas, and Bossier was directed to wire the sum of $8,704,517.09 to Penn Square.
On or about April 25, 1982, Davis, by letter, informed Bossier that collateral securing part of the deposit had been delivered to Fidelity and that the collateral for the construction fund deposit would be delivered to Fidelity. Fidelity informed Bossier in the first week of June that the collateral had not been delivered, but that delivery was imminent. On June 28, Davis informed Bossier that the delivery of the documents to Fidelity had been delayed, but that delivery was imminent. On July 2, Bossier was again informed by Fidelity that no delivery had been made.
On July 5, 1982, Penn Square was declared insolvent by the Comptroller of the Currency, and the Federal Deposit Insurance Corporation was appointed receiver. The FDIC refused to release funds deposited by Bossier in Penn Square and instructed Fidelity not to release any security which they held. This resulted in serious delays and losses to the construction project.
Westside was unable to file suit in Louisiana against Penn Square because of 12 U.S.C. § 94 which controls the venue of any actions brought against national banks for which the FDIC. has been appointed receiver. Suit was filed against Davis individually, alleging his negligence in, among other things, failing to deliver the collateral to Fidelity and failing to notify Bossier that Penn Square would be unable to satisfy the collateral requirements agreed to.
Davis contends that he is not amenable to the jurisdiction of a Louisiana court in this instance because he acted only in his capacity as agent and officer of Penn Square and since the Bank may not be sued here, he may not be sued here.
“Two tests must be met before a state statute can confer jurisdiction over a nonresident defendant. First, the defendant must be amenable to service under the statute, a requirement that is controlled by the law of the forum state. Second, assertion of jurisdiction over the defendant must be consistent with the due process clause of the fourteenth amendment, a requirement that is controlled by federal law. Due process requires that a nonresident defendant have ‘certain minimum contacts’ with the forum state ‘such that the maintenance of the suit does not offend “traditional notions of fair play and substantial justice”,’ or that he perform some act ‘by which [he] purposefully avails [him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws,’ before the forum may extend its long-arm to embrace him.”
Brown v. Flowers Industries, Inc. 688 F.2d 328 (C.A. Fifth Cir.1982).
“However, when dealing with corporate officers and employees . in their individual capacity, a court must consider another factor: personal jurisdiction over corporate officers and employees in their individual capacity may not be predicated merely upon personal jurisdiction over the corporation itself; rather, a court must look to the individual *199 and personal contacts, if any, of the officers and employees with the forum state. Dudley v. Smith, 504 F.2d 979, 982 (5th Cir.1974); Costin v. Olen, 449 F.2d 129, 131 (5th Cir.1971).”
Candy H. v. Redemption Ranch, Inc. 563 F.Supp. 505 (U.S.Dist.Ct.M.D.Ala., N.D., 1983).
LSA-R.S. 13:3201 says, in pertinent part:
“Personal jurisdiction over nonresidents
A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from the nonresident’s
(a) transacting any business in this state;
(b) contracting to supply services or things in this state;
(c) causing injury or damage by an offense or quasi offense committed through an act or omission in this state;
(d) causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state; or....”
The Court, in Jackson v. Bishop College, 359 So.2d 704 (La.App. 1 Cir.1978), said:
“There are two inquiries to be made in applying the statute:
1. Is the defendants’ particular activity encompassed by the statute; and
2. Is there a violation of due process requirements. Cambre v. St. Paul Fire and Marine Insurance Co., 331 So.2d 585 (La.App. 1st Cir.1976).”
“It is well settled that the legislative intent in enacting this statute was to extend personal jurisdiction of Louisiana courts over non-residents to the full limits of due process, i.e., to any non-resident who has ‘minimum contacts’ with this state. Drilling Engineering, Inc. v. Independent Indonesian American Pet Co., 283 So.2d 687 (La.1973), and Aucoin v. Hanson, 207 So.2d 834 (La.App. 3rd Cir.1968). This jurisprudence requires a liberal interpretation of LSA-R.S. 13:3201 in favor of finding jurisdiction. Adcock v. Surety Research & Inv. Corp., 344 So.2d 969 (La.1977); Latham v. Ryan, 373 So.2d 242 (La.App. 3rd Cir.1979).”
“The finding of jurisdiction over nonresidents involves an evaluation of the factual circumstances of the case in light of federal constitutional principles. In order for the proper exercise of jurisdiction in personam over a nonresident there must be sufficient minimum contacts between the non-resident defendant and the forum state to satisfy due process and ‘traditional notions of fair play and substantial justice’ as required by Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); and McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). Whether or not a particular defendant has sufficient minimum contacts with a state is to be determined from the facts and circumstances peculiar to each case. Drilling Engineering, Inc. v. Independent Indonesian American Pet Co., 283 So.2d 687 (La.1973).”
Soileau v. Evangeline Farmer’s Co-Op., 386 So.2d 179 (La.App. 3 Cir.1980).
An evaluation of the factual circumstances of this case leads us to conclude that Penn Square’s activities and that of its agent, Davis, are encompassed by our long-arm statute. There is no dispute that Davis, on behalf of Penn Square, negotiated and finalized an investment contract with Bossier Bank and that an amount in excess of $8,000,000 was invested and subsequently lost. That contract would place them within the ambit of activity encompassed by either LSA-R.S. 13:3201(a) or (b). Therefore, the resolution of this case rests on due process considerations of fundamen *200 tal fairness in requiring Davis to defend this suit in a Louisiana court.
Our inquiry is then, did Davis have sufficient minimum contacts with this State that would permit the exercise of jurisdiction over him.
We do not agree with Davis’ argument that he is entitled to a “fiduciary shield” because his activities were conducted in his capacity as employee/agent of Penn Square.
As the Court in Connor v. Farmer, 80 F.R.D. 472 (U.S.Dist.Ct.E.D.La.1978), said:
“The argument of defendants that the conduct of a corporate representative can only be regarded as conduct of the corporation, as distinguished from conduct in his individual capacity is not sound. The acts of a corporate representative in transacting the corporation’s business, or doing the business of the corporation, cannot be regarded as transacting the corporate representative’s business or doing his business. Wilshire Oil Co. v. Riffe, 409 F.2d 1277 (10th Cir.1969); Path Instruments International Corp. v. Asahi Optical Co., 312 F.Supp. 805 (S.D.N.Y.1970). But the conduct of a corporate representative is his own as well as that of the corporation. To hold otherwise would be contrary to the decision in Simmons v. Travelers Insurance Company, 295 So.2d 550 (La.App. 3d Cir.1974) rejecting the contention that the presence of a defendant in this state in a representative capacity on behalf of his employer precluded his being subject to personal jurisdiction in this state under section (c) of the long-arm statute. It is clear from that decision that the acts or omissions of a corporate representative’s conduct will be regarded as his own personal conduct.”
Davis’ acts with regard to this contract were:
1) his negotiations with Hancock in Arkansas;
2) signing the investment agreement on behalf of Penn Square in Oklahoma;
3) one letter written to Bossier on April 25, 1982; and,
4) two phone calls on June 4 and 23, 1982.
While it is clear from a consideration of the totality of the acts and transactions which occurred in this State that Penn Square was transacting business and contracted to supply a service in this State, were the contacts with Louisiana made by Davis sufficient such that he would have an expectation of being haled into a Louisiana court? We do not believe that his contacts were sufficient in this State such that it would not offend traditional notions of fair play and substantial justice for him to defend this suit here.
The Court, in Columbia Briargate Co. v. First Nat. Bank, 713 F.2d 1052 (C.A. 4th Cir.1983), in discussing the Idaho Potato Com’n v. Washington Potato Com’n, 410 F.Supp. 171 (U.S.Dist.Ct.D.Idaho, 1975) case, said:
“In Idaho Potato, the court distinguished between the situation where the non-resident agent had come into the forum state and committed there the alleged tort and that where the non-resident agent had never been in the state and had no causal connection within the state with the alleged tort. In the first situation, it would find clear amenability to jurisdiction under the forum’s long-arm statute. It said:
‘If Corporation A from State X sends Employee B into State Y to deliver certain products, and B crashes his delivery truck, injuring Resident C in State Y, then jurisdiction over both A and B exists in State Y. The result flows from the commission of a tor-tious act within the purview of State Y’s long-arm statute.’ Id. at 182.
“On the other hand, it would deny amenability to jurisdiction over an agent whose activities occurred without the forum state, though those activities may have had an effect in the forum state. In so doing it recognized the difference between the amenability of the corporate employer and the corporate agent. It *201 found that it was proper under the principles of ‘fair play’ and ‘substantial justice’ ‘to hold that a corporation which engages in activities having [foreseeable] ramifications beyond the state in which it is physically present may have sufficient connection [or “contacts”] with a distant forum where the ramifications are felt’ but that ‘it is quite another matter to hold that an individual working for the same corporation, who has never been present in the distant forum with regard to a corporate transaction, [and has no reason to foresee responsibility in the forum state] has a similar connection [or “contacts”] with the distant forum.’ In essence, what the court in Idaho Potato held was that when the corporate agent has not committed a tort in the forum state his foreseeable ‘contacts’ with that state are too tenuous to establish those ‘minimum contacts’ essential for jurisdiction but that if the agent has come into the forum and while there has committed a tort, whether for his personal benefit or for the benefit of his employer he has thereby ‘purposefully availed] [himself] of the laws of another state’ and of the privilege of conducting activities within the forum state, it seems that his being called on to respond for his tort in the forum state is sufficiently foreseeable to sustain jurisdiction over him under the state long-arm statute.”
We agree with the Court in Columbia that this distinction is a reasonable one and, in light of this, we find that since any involvement which Davis had with the contract occurred outside of Louisiana, except for one letter and two phone calls, that the nexus between Davis, as corporate agent, and this State is too tenuous to support jurisdiction over him personally by reason of service under the long-arm statute. While, by performing corporate business, he caused Penn Square to purposely avail itself of the laws of this State, we do not think that Davis, personally, purposely availed himself of this State’s laws.
“It is proper to hold that a corporation which engages in activity having ramifications beyond the state in which it is physically present may have sufficient connection with a distant forum where the ramifications are felt. Yet, it is quite another matter to hold that an individual working for that same corporation, who has never, been present in the distant forum with regard to a corporate transaction, has a similar connection with the distant forum.”
Idaho Potato Com’n v. Washington Potato Com’n, supra.
We do not feel that the quantity, quality, or nature of Davis’ contacts with this State make it fair and reasonable to require him to come into this State and defend this action.
Accordingly, we deny jurisdiction to the trial court over the person of Bert Davis III, sustaining his exception of lack of personal jurisdiction.
WRIT GRANTED AND MADE PEREMPTORY: Relator’s exception of lack of personal jurisdiction is sustained for the reasons stated above.